**ANDERSON & KARRENBERG**
Jared D. Scott (#15066)
Heather M. Sneddon (#9520)
Jason Greene (#13990)
50 West Broadway, #700
Salt Lake City, UT  84101-2035
Telephone:  (801) 534-1700
hsneddon@aklawfirm.com
jscott@aklawfirm.com

**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (*pro hac vice forthcoming*)
Jeffrey M. Rosenfeld (*pro hac vice forthcoming*)
Liana W. Chen (*pro hac vice forthcoming*)
150 Post Street, Suite 520
San Francisco, CA  94108
Telephone:  (415) 955-1155
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
liana@KRInternetLaw.com

*Attorneys for Plaintiff*

---

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **MICHAEL YATES,** individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>vs.<br><br>**TRAEGER PELLET GRILLS, LLC**, a Delaware limited liability company,<br><br>            Defendant. | **COMPLAINT**<br><br>**PROPOSED CLASS ACTION**<br><br>**Demand for Jury Trial**<br><br>Case No. _____ |

Plaintiff Michael Yates hereby brings this action for damages and other relief against Defendant Traeger Pellet Grills, LLC, and hereby alleges as follows:

## INTRODUCTION

1.     This consumer class action concerns deceptive and unfair business practices by Defendant Traeger Pellet Grills, LLC in the advertisement and sale of its wood pellets for pellet grills. As set forth below, Defendant wrongfully and unfairly deceived the public and its customers by misrepresenting that its wood pellets comprise one type of wood, when in fact the pellets comprise a different type of less expensive wood containing flavored oils to masquerade as more expensive, sought-after grilling woods.

2.     Over the past decade, barbecue culture has exploded, resulting in an entire industry focused on how to smoke prime rib, tri-tip, brisket, ribs, pork shoulder, and other prime cuts of meat "low and slow" to best infuse them with flavor.

3.     In a 2014 article on the surging popularity of competitive grilling, *The New Yorker* notes that "[t]hanks to America's obsession with food, pricey gadgets as status symbols, and reality cooking shows like 'Pitmasters,' semi-pro barbecue events are expanding at a rate of about twenty-five per cent per (sic) year."[1] Barbecue enthusiasts tout their favored grilling methods with dogmatic enthusiasm—charcoal versus propane, brining versus injection, and, most importantly, mesquite versus hickory wood for optimum smoked flavor. Indeed, restauranteur, cookbook author, and renowned guru of smoked meats, Aaron Franklin, has recently listed "choosing the

---

[1] Paynter, Ben, "How to Make it on the Barbecue Circuit," *The New Yorker* (Sept. 6, 2014), *available at* https://www.newyorker.com/business/currency/make-barbecue-circuit.

wrong wood" as one of his top five "crimes against BBQ."[2]

4.      Defendant Traeger is a major player in haute grilling. Defendant markets and sells pellet grills and the wood pellet fuel for these grills. Unlike a conventional charcoal or gas grill, a pellet grill ignites wood pellets within a fire pot, and a fan stokes the flames, creating convection heat to cook the food on the grill's cooking grid.

5.      Importantly, pellet grills, including those of Defendant, sell for several hundred dollars more than their charcoal and propane counterparts. At the time of this Complaint, Defendant's least expensive full-sized pellet grill (the Traeger Pro Series 22 Pellet Grill [Gen 1] in blue) is available for sale on Defendant's website for $649.[3] By contrast, the classic Weber Original Kettle Charcoal Grill is available for $109 on Amazon.[4] Accordingly, pellet grills are luxury items that appeal to grilling aficionados.

6.      In addition to the grills themselves, Defendant markets and sells the wood pellets that fuel pellet grills.

7.      Defendant is well aware that the type of wood used in smoking and grilling is of utmost importance to backyard grillers and champion pitmasters alike. Defendant has capitalized on this obsession with choice of wood by offering fourteen different types of wood and wood combinations in its branded pellets. Defendant's recipes, which are available on its website and

---

[2] Sun, Jasmin, "Crimes Against BBQ Brisket with Austin's Aaron Franklin," *Food & Wine* (June 20, 2019), *available at* https://www.foodandwine.com/articles/crimes-against-bbq-brisket-aaron-franklin.

[3]  https://www.traegergrills.com/pellet-grills/pro-series-gen-1/22-blue-pellet-grill,  accessed  on June 25, 2019.

[4] https://www.amazon.com/Weber-741001-Original-22-Inch-Charcoal/dp/B00004RALU, accessed on June 25, 2019.

through its mobile app, specify the type of wood pellet to be used in each to achieve optimum flavor.

8.      In marketing and selling its wood pellets, Defendant uniformly represents that its wood pellets comprise a specific type of wood.

9.      For example, Defendant markets and sells, "Hickory BBQ Wood Pellets" and "Mesquite BBQ Wood Pellets."

10.      Defendants' representations about the wood pellets are false.

11.      Contrary to Defendant's advertisements and product packaging, Defendant's wood pellets do not comprise or even primarily comprise the identified wood.

12.      Thus, Defendant's Hickory BBQ Wood Pellets do not contain hickory wood. Instead, Defendant adds a hickory-flavored oil to a less expensive wood to give the Hickory BBQ Wood Pellets a hickory flavor, resulting in weaker, less robust hickory flavor in cooked foods.

13.      Similarly, Defendant's Mesquite BBQ Wood Pellets do not contain mesquite wood. Instead, Defendant adds a mesquite-flavored oil to a less expensive wood to give the Mesquite BBQ Wood Pellets a mesquite flavor, resulting in weaker, less robust mesquite flavor in cooked foods.

14.      Plaintiff Michael Yates is an amateur griller.

15.      Plaintiff wished to raise his grilling results to the next level with the addition of hardwood flavoring and, in particular, mesquite wood flavoring.

16.      Thus, Plaintiff purchased three bags of Defendant's Mesquite BBQ Wood Pellets, reasonably believing that the product consisted entirely of mesquite wood.

17.      When Plaintiff used Defendant's Mesquite BBQ Wood Pellets to grill, he found

that his food's flavor did not reflect actual mesquite wood.

18.    Upon inquiring, Plaintiff discovered that Defendant's Mesquite BBQ Wood Pellets do not actually contain any mesquite wood.

19.    Plaintiff would not have purchased Defendant's Mesquite BBQ Wood Pellets had he known that they did not comprise mesquite wood.

20.    Plaintiff also purchased two bags of Defendant's Texas Beef Blend Pellets, reasonably believing that the product consisted entirely of oak, mesquite, and pecan wood.

21.    When Plaintiff used Defendant's Texas Beef Blend Pellets, he found that his food's flavor did not reflect actual mesquite wood.

22.    In fact, Defendant's Texas Beef Blend Pellets do not actually contain any mesquite wood.

23.    Plaintiff would not have purchased Defendant's Texas Beef Blend Pellets had he known that they did not comprise mesquite wood.

24.    As a result of Defendant's misrepresentations, Plaintiff and Class Members who purchased Defendant's wood pellets were injured and lost money.

## JURISDICTION & VENUE

25.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant.

26.    This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in Salt Lake City, Utah.

27.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendant resides in this district.

## PARTIES

28.     Plaintiff Michael Yates is and was at all relevant times a resident of Livermore, California.

29.     Defendant Traeger Pellet Grills, LLC is a Delaware limited liability company headquartered in Salt Lake City, Utah.

30.     Whenever this Complaint refers to any act or acts of Defendant, the reference shall be deemed to mean that the directors, officers, employees, affiliates, or agents of Defendant authorized such act while actively engaged in the management, direction, or control of the affairs of Defendant, and/or by persons who are the parents or alter egos of the Defendant while acting within the scope of their agency, affiliation, or employment.

## FACTUAL ALLEGATIONS

**A.     Grilling**

31.     Grilling is an American pastime with roots dating back to the U.S. colonies.

32.     Grilling is a form of cooking where food is placed on a metal or wire grid, and dry heat is applied to the surface of the food, typically from below the food.

33.     Grilled food acquires a distinctive aroma and flavor from a chemical process called the Maillard reaction.

34.     Over the last decade, grilling, and competitive grilling in particular, have gained significant popularity.

35.     Grilling competitions are currently held throughout the country, and numerous

television programs about grilling air across multiple networks.

36.     As a result of this popularity, personal grilling and grilling events of all types have experienced significant growth and expansion over the last decade.

37.     One way for grillers to take their grilling to the next level is by using wood smoke to flavor their food while it cooks on the grill.

38.     Historically in the United States, grilling was (and still is) done on charcoal and propane or natural gas grills. Wood chips can be added on top of the coals (or above the gas burners/briquettes) to create a smoldering effect that provides additional flavor to the food.

39.     Different types of wood produce different flavors within the food. Thus, the type of wood a griller uses varies based on what the griller is cooking and the taste the griller hopes to achieve.

40.     Some woods that are prized for their flavor in grilling are mesquite, hickory, pecan, apple, pear, maple, and oak.

41.     As an example, mesquite has a strong, earthy flavor that is ideal for red meat. In contrast, apple tree wood provides a sweet and fruity flavor that compliments pork, poultry, and small game birds.

42.     Because the type of wood used has a significant effect on grilled foods' taste, grillers consider the type of wood used when grilling to be an important factor in purchasing wood for grilling.

**B.     Traeger Pellet Grills and Traeger Pellets**

43.     Joe Traeger developed the Traeger pellet grill in 1985 and patented it in 1986.

44.     The term "pellet" refers to the fuel for a pellet grill's heat source; each pellet is

about a centimeter long and a quarter of a centimeter wide.

45.     Pellet grills typically have a side-mounted hopper where the firebox would be on a conventional grill. A rotating auger feeds pellets from the hopper to the fire pot, where they are lit by an igniter rod. A fan then stokes the fire and distributes heat and smoke throughout the grill. That heat and smoke cooks food that rests on the grill's grid.

46.     Pellets for grilling consist of compressed hardwood sawdust.

47.     Defendant markets and sells its namesake pellet grills.

48.     In addition to marketing and selling pellet grills, Defendant markets and sells wood pellets for pellet grills.

49.     Since approximately May 14, 2017, Defendant has marketed and sold a variety of pellets, including products labeled as:

- "Hickory BBQ Wood Pellets";

- "Mesquite BBQ Wood Pellets";

- "Apple BBQ Wood Pellets";

- "Cherry BBQ Wood Pellets";

- "Oak BBQ Wood Pellets";

- "Alder BBQ Wood Pellets";

- "Pecan BBQ Wood Pellets";

- "Winemaker's Blend [–] Hickory | Oak | Apple | Alder";

- "Big Game Blend [–] 100% Pure Hardwood Pellets [–] Hickory, Red & White Oak With Rosemary Herbs";

- "Signature Blend [–] Hickory | Maple | Cherry";

- "Turkey Blend [–] Oak | Hickory | Maple | Cherry";

- "Texas Beef Blend [–] Oak | Mesquite | Pecan";

(collectively, the "Traeger Pellets").

50.    Since before July 1, 2015 through approximately May 13, 2017, Defendant marketed and sold the Traeger Pellets with different product packaging, where the Traeger Pellets were labeled as:

- "All Natural Wood Pellets Hickory";

- "All Natural Wood Pellets Mesquite";

- "All Natural Wood Pellets Apple";

- "All Natural Wood Pellets Cherry";

- "All Natural Wood Pellets Oak";

- "All Natural Wood Pellets Alder";

- "All Natural Wood Pellets Pecan";

- "Big Game Blend [–] 100% Pure Hardwood Pellets [–] Hickory, Red & White Oak With Rosemary Herbs";

- "Turkey Blend [–] Oak | Hickory | Maple | Cherry";

- "Texas Beef Blend [–] Oak | Mesquite | Pecan".

51.    Regarding Defendant's Mesquite BBQ Wood Pellets, since approximately May 14, 2017 and through the present, Defendant's product packaging has appeared as follows:



The product packaging has also stated, "MESQUITE—100% PURE HARDWOOD PELLETS—

*Premium* 100% Food-Grade Hardwood Pellets—GRILL IT. FLAVOR IT."

52.     Since before July 1, 2015 and through approximately May 13, 2017, Defendant's

product packaging for the Mesquite BBQ Wood Pellets appeared as follows:



The product packaging also stated, "All Natural Hardwood," and "The experts agree. If you want the ultimate grilling experience you need to use wood. Traeger Wood Pellet Grills use all natural wood pellets, which creates a rich flavor that charcoal and gas grills and smokers just can't match. With Traeger, it is all about the wood."

53.     Since approximately September 2017, Defendant's product packaging for the Texas Beef Blend pellets has appeared as follows:



54.     Since before July 1, 2015 and through approximately September 2017, Defendant's product packaging for Defendant's Texas Beef Blend pellets appeared as follows:



55.     At all relevant times, Defendant used similar product packaging and advertisements for its other Traeger Pellets products.

56.     On information and belief, Defendant drafted and published the product packaging and advertisements for its Traeger Pellets from its corporate offices in Utah.

57.     From Defendant's product packaging, any reasonable consumer would understand that the Traeger Pellets primarily consist of—if not entirely consist of—the advertised wood.

58.     Thus, for example, a reasonable consumer would understand that Defendant's Mesquite BBQ Wood Pellets primarily consist of—if not entirely consist of—mesquite wood.

59.     In fact, the Mesquite BBQ Wood Pellets do not have any mesquite wood in them

(or only a trace amount).

60.    On information and belief, Defendant adds a mesquite-flavored oil to a less expensive wood to give the Mesquite BBQ Wood Pellets a mesquite flavor.

61.    Similarly, the Hickory BBQ Wood Pellets do not have any hickory wood in them (or only a trace amount).

62.    The Apple BBQ Wood Pellets contain less than one-third apple wood in them.

63.    The Cherry BBQ Wood Pellets contain less than one-third cherry wood in them.

64.    The Pecan BBQ Wood Pellets contain less than one-third pecan wood in them.

65.    The Winemaker's Blend Pellets do not contain hickory wood.

66.    The Big Game Blend Pellets do not contain hickory wood.

67.    The Signature Blend Pellets do not contain hickory wood.

68.    The Turkey Blend Pellets do not contain hickory wood.

69.    The Texas Beef Blend Pellets do not contain mesquite wood.

70.    On information and belief, the "Oak BBQ Wood Pellets" and "Alder BBQ Wood Pellets" consist of varying amounts of oak wood and alder wood depending on where in the U.S. they were manufactured and frequently contain less than one-third of the advertised wood.

71.    Defendant knew that the Traeger Pellets did not comprise or primarily comprise the identified wood when Defendant marketed and sold the Traeger Pellets.

**C.    Plaintiff's Purchase of Traeger Pellets**

72.    Plaintiff is an enthusiastic amateur griller.

73.    Plaintiff's primary concern in grilling is the taste of his final, cooked food.

74.    Plaintiff frequently seeks to use wood in his grilling to imbue the cooked food with

13

a particular wood's flavor.

75.     Plaintiff is conscientious of the type of wood with which he grills, as different woods provide his food with different flavors.

76.     In March 2019, Plaintiff purchased one bag of Defendant's Mesquite BBQ Wood Pellets and two bags of Defendant's Texas Beef Blend Pellets from Amazon.com. Plaintiff also purchased two bags of Defendant's Mesquite BBQ Wood Pellets from The Home Depot.

77.     Based on the product packaging for Defendant's Mesquite BBQ Wood Pellets, Plaintiff understood that the pellets comprised 100% mesquite wood.

78.     Based on the product packaging for Defendant's Texas Beef Blend Pellets, Plaintiff understood that the pellets contained mesquite wood.

79.     Plaintiff relied on that representation in deciding to purchase Defendant's Mesquite BBQ Wood Pellets and Texas Beef Blend Pellets, as it was important to Plaintiff to cook with actual mesquite wood.

80.     When Plaintiff grilled with the Mesquite BBQ Wood Pellets and the Texas Beef Blend Pellets he had purchased, he found that the flavor did not appear to reflect actual mesquite wood.

81.     As such, Plaintiff called Defendant's customer service to inquire about the composition of Defendant's Mesquite BBQ Wood Pellets. In response, Defendant informed Plaintiff that Defendant's Mesquite BBQ Wood Pellets comprised 100% alder or oak wood, and that mesquite oil was added to those woods for flavoring. Defendant further explained that there was no mesquite wood in Defendant's Mesquite BBQ Wood Pellets.

82.     Plaintiff would not have purchased Defendant's Mesquite BBQ Wood or

14

Defendant's Texas Beef Blend Pellets but for Defendant's representation that the products consisted of actual mesquite wood.

83.     As a result, Plaintiff was harmed by Defendant's misrepresentations and Plaintiff lost money.

## CLASS ACTION ALLEGATIONS

84.     Plaintiff brings this class action pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure and seeks certification of the class and subclasses identified below.

### The Definition of Proposed Class

85.     Plaintiff brings this class action on behalf of the following national class (the "National Class"):

> All persons who purchased Traeger Pellets from any retail outlet in the United States after October 1, 2015, or who resided in the United States at the time they made online purchases of Traeger Pellets after October 1, 2015. Excluded from the National Class are the Defendant, its officers and directors at all relevant times, members of Defendant's immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which the Defendant has or had a controlling interest.

86.     Plaintiff also brings his claims on his own behalf, and on behalf of the following class (the "California Subclass"):

> All persons who purchased Traeger Pellets from any retail outlet in the State of California after October 1, 2015, or who resided in California at the time they made online purchases of Traeger Pellets after October 1, 2015. Excluded from the California Subclass are the Defendant, its officers and directors at all relevant times, members of Defendant's immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which the Defendant has or had a controlling interest.

87.     Plaintiff reserves the right to amend or modify the National Class and the California Subclass definitions in connection with a Motion for Class Certification or as the result of discovery.

### The Size of the Proposed Class

88.     Plaintiff does not currently know the exact size of the proposed Classes.

89.     However, Plaintiff is aware that the National Class and California Subclass are so numerous that joinder of the individual members of the proposed Classes (the "Class Members") is impracticable. On information and belief, the Classes include over a million people geographically dispersed throughout the country and the State of California. The number and identities of Class Members are unknown to Plaintiff, but can be ascertained through discovery, including into retailers' records of sales, and published notice.

### The Adequacy of Representation by the Class Representative

90.     Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has no interests adverse to the interests of the Classes and has retained counsel with experience in the prosecution of class actions and complex litigation, including consumer litigation, and who will vigorously prosecute this action.

### The Common Questions of Law and Fact

91.     Questions of law or fact common to the Classes exist as to Plaintiff and all Class Members, and these common questions predominate over any questions affecting only individual Class Members. Among the common questions of law and fact are the following:

a.      What different types of wood comprise the Traeger Pellets.

b.      Whether Defendant misrepresented that Traeger Pellets contain or comprise certain types of wood.

c.      Whether Defendant's representations about the types of wood contained in or comprising the Traeger Pellets were false, misleading, or likely to deceive.

d.      Whether Defendant misrepresented that the Traeger Pellets have characteristics, uses, or benefits that they do and did not have.

e.      Whether the type of wood comprising the Traeger Pellets is a material fact to consumers.

f.      What is the amount of restitution and/or measure of damages to award to Plaintiff and the Classes.

<u>The Typicality of Claims of the Class Representative</u>

92.     Plaintiff does not anticipate any difficulties in the management of this action as a class action. The Classes are ascertainable and there is a well-defined community of interests in the questions of law and fact alleged because the rights of each Class Member were infringed or violated in similar fashion based upon Defendant's misconduct. Notice can be provided through records and publication, the cost of which is properly imposed upon the Defendant.

93.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff and the Class Members. Common questions of law and fact predominate over any individual questions that may arise.

94.     The injuries sustained by Plaintiff and the Class Members flow, in each instance, from a common nucleus of operative facts—*i.e.*, Defendant's misrepresentation of the Traeger Pellets in Defendant's product packaging.

95.     Plaintiff's claims are typical of the claims of the Classes he seeks to represent. Defendant's uniform, material misrepresentations and omissions and its use of unfair and deceptive business practices in the marketing and sale of its Traeger Pellets apply equally to Plaintiff and all Class Members. Moreover, the defenses, if any, that will be asserted against Plaintiff's claims are typical of the defenses, if any, that will be asserted against the Class Members' claims.

<u>The Nature of the Notice to the Proposed Class</u>

96.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The vast majority of the name and contact information of the Class is likely available from Defendant or its retail partners. To the extent possible, Plaintiff contemplates providing notice or notices to the Class, as approved by the Court, to be delivered through the United States Mail or as otherwise directed. In the alternative or in connection with mailed notices, Plaintiff may utilize paid advertising notices online or in media likely to draw attention of class members e.g. specialty magazines. The notice or notices shall, among other things, advise the Class that they shall be entitled to "opt out" of the Class if they so request by a date specified within the notice, and that any judgment, whether favorable or not, entered in this case will bind all class members except those who affirmatively exclude themselves by timely opting out.

<u>The Additional Matters Pertinent to the Findings as
Provided by Fed. R. Civ. P. 23(b)(3)</u>

97.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and individual joinder of all Class Members is impracticable, if

18

not impossible, because the massive number of Class Members are scattered throughout the United States and California. Moreover, the cost to the court system of such individualized litigation would be substantial. Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties and courts hearing virtually identical lawsuits. By contrast, the conduct of this action as a class action would present fewer management difficulties, conserve the resources of the parties and the courts, and protect the rights of each Class Member and maximize recovery to them.

98.     Defendant has acted on grounds generally applicable to the entirety of the Classes, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION

**(Violations of the Utah Consumer Sales Practices Act, Utah Code Ann. §§13-11-1 *et seq.*, Asserted by Plaintiff Individually and on Behalf of the National Class)**

99.     Plaintiff incorporates by reference all of the above allegations as if fully set forth herein.

100.    Defendant is a "supplier," as that term is defined by Utah Code §13-11-3(6).

101.    Plaintiff's and members of the National Class's purchases of Traeger Pellets are "consumer transactions," as that term is defined by Utah Code §13-11-3(2).

102.    Defendant has violated and continues to violate Utah Code §13-11-4(2)(a) in that Defendant has knowingly or intentionally represented and is representing that the Traeger Pellets have sponsorship, approval, performance characteristics, accessories, uses, or benefits they do not have.

103.    Specifically, by claiming that the Traeger Pellets comprise or primarily comprise

certain types of wood, when the Traeger Pellets do not comprise or primarily comprise those types of wood, Defendant has violated and continues to violate Utah Code §13-11-4(2)(a).

104.    Defendant's materially false and misleading misrepresentations also violate other portions of the Utah Consumer Sales Practices Act, including §13-11-4(2)(b) (indicating that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, when it is not) and §13-11-4(2)(e) (indicating that the subject of a consumer transaction has been supplied in accordance with a previous representation, when it was not).

105.    Defendant's conduct also violates rules adopted by the Utah Division of Consumer Protection, Utah Admin. Code R152-11-3(b)(1), in that Defendant offered to sell the Traeger Pellets using a statement in an advertisement that would create in the mind of a reasonable consumer a false impression of the grade, quality, or origin of the Traeger Pellets.

106.    In making the representations described herein, Defendant knew and should have known that its representations were untrue and misleading, in violation of Utah Code §13-11-4.

107.    Defendant's misrepresentations are a material reason Plaintiff and the National Class Members purchased Traeger Pellets.

108.    As a result of Defendant's materially false and misleading misrepresentations about the Traeger Pellets, Plaintiff and the National Cass Members have been harmed.

## SECOND CAUSE OF ACTION

**(Violations of California Bus. & Prof. Code §§17200 *et seq.*, Asserted by Plaintiff Individually and on Behalf of the California Subclass)**

109.    Plaintiff incorporates by reference all of the above allegations as if fully set forth herein.

110.    Defendant violated, and continues to violate, California Business and Professions

Code §§17200 *et seq.* (the "UCL"), by representing that the Traeger Pellets comprise one type of wood when they primarily comprise another type of wood.

111.    By engaging in the above-described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of Cal. Bus. & Prof. Code §§17200 *et seq.*

112.    Defendant committed "unlawful" business acts and practices by: a) violating California's Bus. & Prof. Code §§17500 *et seq.*; b) violating California's Consumer Legal Remedies Act, Cal. Civil Code §§1750 *et seq.*; c) violating Utah Code §§13-11-1 and 13-11a-1; and d) violating the Lanham Act, 15 U.S.C. §1125(a).

113.    Defendant committed "unfair" business acts and practices by: a) engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and to other California Subclass Members; b) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and to other California Subclass Members; and c) engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws detailed herein.

114.    Specifically, Defendant engaged in "unfair" business acts and practices by misrepresenting the composition of the Traeger Pellets.

115.    Defendant committed "fraudulent" business acts by intentionally misrepresenting on the product packaging that the Traeger Pellets comprised a certain type of wood while Defendant knew that the Traeger Pellets did not comprise the identified wood.

116.    Defendant's misrepresentations about the composition of the Traeger Pellets were and are likely to deceive the public.

117.    Plaintiff and the California Subclass Members have suffered injury in fact and have lost money and property as a result of Defendant's unlawful and unfair practices, in that, among other things, Defendant's misrepresentations are a material reason that Plaintiff and the California Subclass Members purchased the Traeger Pellets and paid the price that they paid.

118.    Plaintiff relied on Defendant's representations about the composition of the Traeger Pellets in deciding to purchase the product, and Plaintiff would not have purchased the Traeger Pellets had he been aware of the Traeger Pellets' actual composition.

119.    Defendant's unlawful, unfair, and fraudulent conduct described herein is ongoing and continues to this date.

### THIRD CAUSE OF ACTION

**(Violations of California Bus. & Prof. Code §§17500 *et seq.*, Asserted by Plaintiff Individually and on Behalf of the California Subclass)**

120.    Plaintiff incorporates by reference all of the above allegations as if fully set forth herein.

121.    Defendant has published product packaging for the Traeger Pellets.

122.    Defendant's product packaging for the Traeger Pellets describes the Pellets as comprising or primarily comprising a specific type of wood.

123.    In actuality, the Traeger Pellets do not comprise or primarily comprise the types of wood identified in Defendant's product packaging.

124.    Defendant's product packaging for the Traeger Pellets has deceived the public, is actually deceiving the public, and has the capacity, likelihood, or tendency to deceive or confuse the public.

125.    By its actions, Defendant has disseminated and is disseminating uniform

22

advertising in the form of product packaging concerning the Traeger Pellets, which by its nature, is unfair, deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500 *et. seq*.

126.     In making and disseminating the product packaging identified herein, Defendant knew and should have known that its advertisements and product packaging were untrue and misleading, in violation of California Business & Professions Code §§17500 *et seq*.

127.     Defendant's misrepresentations and omitted material facts in its product packaging for the Traeger Pellets are a material reason that Plaintiff and the California Subclass Members purchased Traeger Pellets.

128.     Plaintiff relied on Defendant's representations about the composition of the Traeger Pellets in deciding to purchase the product, and Plaintiff would not have purchased the Traeger Pellets had he been aware of the Pellets' actual composition.

129.     Plaintiff was injured in fact and lost money as a result of Defendant's false advertisements and product packaging in that Plaintiff would not have purchased the Traeger Pellets had he been aware of the Pellets' actual composition.

130.     Defendant's conduct as alleged herein is ongoing and continues to this date.

**FOURTH CAUSE OF ACTION**

**(Violations of California Civil Code §§1750 *et seq.*, Asserted by Plaintiff Individually and on Behalf of the California Subclass for Injunctive Relief Only)**

131.     Plaintiff incorporates by reference all of the above allegations as if fully set forth herein.

132.     Plaintiff and members of the California Subclass are "consumers" as that term is used in California Civil Code §1761(d).

133.    The Traeger Pellets are "goods" within the meaning of California Civil Code §1761(a).

134.    Defendant has violated and continues to violate California Civil Code §1770(a)(5) in that Defendant has represented and is representing that the Traeger Pellets have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.

135.    Specifically, by claiming that the Traeger Pellets comprised or primarily comprised a certain type of wood, when the Traeger Pellets do not comprise or primarily comprise that type of wood, Defendant has violated and continues to violate California Civil Code §1770(a)(5).

136.    Defendant's materially false and misleading misrepresentations also violate other portions of the CLRA including §1770(a)(7), (a)(9), and (a)(16).

137.    Defendant misrepresented that the Traeger Pellets comprised a certain type of wood while Defendant knew that the Traeger Pellets did not comprise the identified wood.

138.    Plaintiff relied on Defendant's representations about the composition of the Traeger Pellets in deciding to purchase the product, and Plaintiff would not have purchased the Traeger Pellets had he been aware of the Pellets' actual composition.

139.    Thus, Defendant's misrepresentations are a material reason that Plaintiff and the California Subclass Members purchased Traeger Pellets.

140.    As a result of Defendant's materially false and misleading misrepresentations about the Traeger Pellets, Plaintiff and the California Subclass Members have been harmed.

141.    Consequently, Plaintiff and the California Subclass are entitled to an order enjoining the above-described acts and practices.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and all Class Members pray that the Court:

A.      Certify this action as a class action;

B.      Award all actual, direct, incidental, statutory, consequential, punitive and exemplary damages to be determined at trial;

C.      Grant appropriate injunctive and/or declaratory relief, including restitutionary relief ;

D.      Award pre- and post-judgment interest;

E.      Award attorney's fees and costs of suit; and

F.      Award such other and further relief the Court deems appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**DATED:**        October 1, 2019

ANDERSON & KARRENBERG

*/s/ Jared D. Scott*
Heather M. Sneddon
Jared D. Scott

**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (*pro hac vice pending*)
Jeffrey M. Rosenfeld (*pro hac vice pending*)
Liana W. Chen (*pro hac vice pending*)

***Attorney for Plaintiffs***