1            IN THE UNITED STATES DISTRICT COURT

2                     DISTRICT OF UTAH

3                     CENTRAL DIVISION

4

5   MICHAEL YATES, individually and )

6   on behalf of others similarly  )

7   situated,                       )

8            Plaintiffs,            )

9   vs.                             )  Case No. 2:19-CV-723DAK

10  TRAEGER PELLET GRILLS, a        )

11  Delaware limited liability      )

12  company,                        )

13           Defendant.             )

14  _____)

15

16

            BEFORE THE HONORABLE DALE A. KIMBALL
17          ------------------------------------

18                   March 14, 2024

19

20                   Motion Hearing

21

22

23

24

25

```
1                    A P P E A R A N C E S

2

3

     For Plaintiffs:              JARED D. SCOTT
4                                 JACOB W. NELSON
                                  50 West Broadway
5                                 Suite 600
                                  Salt Lake City, Utah
6
                                  KARL S. KRONENBERGER
7                                 548 Market Street
                                  Suite 58399
8                                 San Francisco, California

9

10

11   For Defendant:              JAMES F. SPEYER
                                 777 South Figueroa Street
12                               44th Floor
                                 Los Angeles, California
13
                                 JULIANNE P. BLANCH
14                               JULIETTE P. WHITE
                                 201 South Main Street
15                               Suite 1800
                                 Salt Lake City, Utah
16

17

18

19

20

21   Court Reporter:            Ed Young
                                351 South West Temple
22                              Room 3.302
                                Salt Lake City, Utah 84101-2180
23                              801-328-3202
                                ed_young@utd.uscourts.gov
24

25
```

```
1   March 14, 2024                              10:00 a.m.

2                    P R O C E E D I N G S

3

4        THE COURT:  Good morning, everyone.

5        We're here in the matter of Yates versus Traeger

6   Pellet Grills, 2:19-CV-723.  The plaintiff is represented by

7   Mr. Jared Scott.  Mr. Scott, Mr. Jacob Nelson and Mr. Karl

8   Kronenberger, correct?

9        The defendant is represented by Mr. James Speyer,

10  Ms. Julianne Blanche and Ms. Juliette White, correct?

11       Mr. Scott, this is your motion for summary

12  judgment, correct?

13       MR. SCOTT:  Correct, Your Honor.

14       THE COURT:  Go ahead.

15       MR. SCOTT:  As Your Honor has probably seen from

16  the docket, this case has been going for a while.  We have

17  had a fair number of proceedings with Judge Jenkins who made

18  a variety of findings, including certifying the class.  In

19  that process --

20       THE COURT:  I have seen all of that, yes.

21       MR. SCOTT:  Judge Jenkins saw a lot of evidence

22  and I am going to show you some of the same evidence that he

23  saw today.  This is the packaging that is at issue.  It is

24  the hickory pellets.  The mesquite ones look almost

25  identical but say mesquite.  It says hickory, 100-percent
```

1    pure hardwood pellets.  It also says 100-percent food grade

2    hardwood pellets here.  100-percent pure hardwood pellets

3    here.  It makes the same representation two more times on

4    the back.

5            It turns out that any way that you read this

6    statement it is false.  These pellets were not hickory or

7    mesquite as the case may be.  They are not 100-percent pure

8    hardwood pellets.  In fact, if you look at the recipe and

9    the patent application for the pellets, you will find that

10   by parts it is approximately 22-percent something other than

11   hardwood.

12           Complicating it even further is that these pellets

13   are not even hickory wood.  There are base woods, cheaper

14   woods, oak and alder, mixed in.  In the mesquite pellets --

15   no package of mesquite pellets created during the class

16   period ever had any mesquite wood in them at all.  So no

17   matter how you read this, if you're looking for hickory,

18   you're not getting it.  If you are looking for mesquite, you

19   are not getting it.  If you are looking for 100-percent pure

20   hardwood pellets, you're not getting it.

21           THE COURT:  Your argument is that there are no

22   material undisputed issues of fact?

23           MR. SCOTT:  That is correct, Your Honor.

24           THE COURT:  Most of these cases are decided by a

25   jury.  Aren't they fact questions?

1          MR. SCOTT:  Yep.  In most of the cases when

2     somebody says 100-percent pure something and it contains

3     22 percent of other things, that is pretty clear evidence

4     that there is a misrepresentation.  So there is still going

5     to be some meat on the bone for the jury here, but we are

6     seeking a finding only that the packaging at issue here that

7     I just showed you violates the Utah Consumer Sales Practices

8     Act and the three California statutes.

9          THE COURT:  You are not seeking remedies other

10     than that finding.

11          Is that right?

12          MR. SCOTT:  That is correct, Your Honor.

13          It will leave to Your Honor or the jury later the

14     scope of the appropriate injunctive and declaratory relief

15     and ancillary relief under the Utah Consumer Sales Practices

16     Act as well as the issue of damages.

17          THE COURT:  Why shouldn't they be looking at that

18     and instead of you waving it in front of me, why don't you

19     wave it in front of them?

20          MR. SCOTT:  We will, I'm sure, Your Honor.

21          The purpose of summary judgment is to narrow the

22     issues for trial.  Also, it has the side benefit of

23     promoting settlement, which is a favored policy in federal

24     cases to promote settlement.  So Rule 56 allows us to seek

25     partial summary judgment to narrow the issues at trial, and

1   that is our goal here is to narrow the need for trial.  When

2   the facts are undisputed as they are here, it is

3   appropriate.

4          The argument here boils down to two things.  Two

5   things have to be true for Traeger to prevail today.  Number

6   one is you have to believe their declarations and evidence

7   that the pellets are actually 100-percent hardwood.

8          Now, this seems very strange to me considering

9   they admit there are other ingredients.  If I buy a bottle

10  of 100-percent pure drinking water and it contains 22

11  percent of something else, I'm going to be concerned.  It is

12  not 100-percent pure.

13         The same principle applies here.  They have this

14  sham affidavit that says, hey, it is 100-percent pure

15  hardwood because it tastes like it, and we have to use other

16  ingredients where we can't make the pellets.  It does not

17  matter why it is false.  It is false.  They are

18  misrepresenting to consumers over the course of many years

19  that their pellets were 100-percent pure hardwood when they

20  weren't, that they were mesquite or hickory when they

21  weren't.

22         THE COURT:  Aren't these the kind of cases where

23  there are a lot of consumer surveys --

24         MR. SCOTT:  Typically, but not required.

25         THE COURT:  -- and several experts?

1          MR. SCOTT:  Typically, but not required for our

2     purposes today and there are two reasons why.  Under the

3     Utah Consumer Sales Practices Act, there is no requirement

4     for reliance.  In advertising a misrepresentation can

5     violate the Utah Consumer Sales Practices Act with no

6     requirement for reliance except for actual damages.  Since

7     we are not talking about damages today, we are talking about

8     just the finding that it was violated, we don't have to

9     prove that anyone was misled in any way.  We just have to

10    prove that the statements were false.

11         That is why if Your Honor agrees with us that

12    something that contains 22-percent oils is not 100-percent

13    hardwood, we win on that claim.

14         The same thing under the California act.  They

15    could go on and say you need all this extrinsic evidence.

16    Well, they ignore the fact that those cases say that if it

17    is false, then you don't have to show extrinsic evidence.

18    You have to show intrinsic evidence of falsity or extrinsic

19    evidence that it is misleading.  So their argument is that

20    we don't have evidence that it is misleading.  They brush

21    over it and they say it is not false, and because the

22    statements are not false you have to show extrinsic evidence

23    that people were actually confused.  That is not true when

24    it is false.  If Your Honor finds that these pellets that

25    contain 22-percent oil are not 100-percent pure hardwood, we

1    win on the California and the Utah claims.

2           THE COURT:  What are your best cases that you cite

3    on this kind of a question?

4           MR. SCOTT:  This kind of a question?

5    Unfortunately, there is a dearth of cases under the Utah

6    Consumer Sales Practices Act, so we are relying primarily on

7    the plain language of the statute.  In California, and you

8    will have to excuse me, Your Honor, but Mr. Kronenberger, my

9    colleague, is a California attorney and if we get too far

10   into California he may have to step up and provide you more

11   details on that.  But the cases that we cite deal with the

12   situation -- if we even look at -- maybe it is easier this

13   way.

14          Let's look at the cases cited by Traeger in their

15   opposition.  If we look at page 19 of their opposition they

16   cite cases that stand for this exact principle and we have

17   cited some of them too in ours, but I think using theirs to

18   illustrate this point makes it very clear.

19          This is under the Lanham Act, which the California

20   statutes actually require less consumer surveys than the

21   Lanham Act, but they are citing William H. Morris Co. versus

22   Group W., Inc. case.  The quote that they use is where a

23   statement is not literally false and is only misleading in

24   context, however, proof that the advertising actually

25   conveyed the implied message and, thereby, deceived a

1    significant portion of the recipients becomes critical.

2           The other case they cite is Ries versus Arizona

3    Beverages.  In that case the court granted summary judgment

4    because there wasn't -- in that case the question was

5    whether citric acid is natural.  In that case there was no

6    concession that the ingredients were not all natural because

7    Arizona Beverages argued that citric acid was a natural

8    thing.

9           THE COURT:  What court decided that case?

10          MR. SCOTT:  That is the Northern District of

11   California.

12          In that case the court said that the plaintiffs

13   have neither intrinsic evidence that labels are false or

14   extrinsic evidence that a significant portion of the

15   consuming public would be confused by them.  It is

16   either-or.  You get to choose.  You can either show it is

17   false or you show it is misleading.

18          We actually have both here.  Without doing our own

19   consumer survey, which is expressly not required, we have

20   proof of falsity and proof of the misleading nature, but we

21   only have to show that it was false and then the requirement

22   of doing surveys and showing that people were misled is not

23   required.

24          It makes sense, too, because if Your Honor looks

25   at this, this is not like a contract where the terms are

1    ambiguous and subject to multiple interpretations.

2    100-percent pure hardwood pellets can't mean anything other

3    than 100-percent pure hardwood pellets.  I know they have

4    tried to torture the definition of pure and 100 percent

5    beyond recognition, but if we look at it reasonably, no

6    reasonable person can interpret that in any other way.

7            The other thing that has to be true for Traeger to

8    prevail on the whole motion is that our claims have to be

9    somehow more limited than we have litigated in the entire

10   case.  This is an issue that --

11           THE COURT:  What do you mean by that?

12           MR. SCOTT:  They say, well, you only said -- their

13   argument is because the complaint in a few parts says that

14   the deceptive thing is that it is not actually hickory,

15   predominantly hickory or predominantly mesquite, that the

16   100-percent pure hardwood portion is not at play.  This has

17   been briefed multiple times in this case and it was argued

18   in the certification, and Judge Jenkins after hearing all of

19   that evidence and seeing the briefing two times, because he

20   had us brief and argue the certification issue twice, he

21   concluded that Traeger has misrepresented the contents of

22   its pellet bags because the bags are not 100-percent

23   hardwood pellets of any kind and --

24           THE COURT:  You need to slow down.

25           MR. SCOTT:  Sorry.  I will start over and go slow.

1    I apologize.

2          THE COURT:  The reporter may beat me up after if I

3    don't ask you to slow down.

4          MR. SCOTT:  He would be right to do so.

5          Traeger has misrepresented the contents of its

6    pellet bags because the bags are not 100-percent pure

7    hardwood pellets of any kind and certainly not 100-percent

8    pure nor all natural hickory or mesquite.  That was from

9    Judge Jenkins' order last September or August certifying the

10   class.

11         THE COURT:  Am I bound by that finding?

12         MR. SCOTT:  No, you are not, Your Honor, but what

13   is important here is that he made that finding with the same

14   evidence and it is consistent with what the evidence

15   actually shows.

16         Also, the dispute I'm talking about here is what

17   claims are at issue.  They are essentially taking the

18   position that if we allege five breaches of contract and

19   then we find three more during discovery or we just knew

20   about them but didn't include them in the complaint, that we

21   can't pursue those.  That is not how this works.  They have

22   cited no law saying our complaint should be limited this

23   way, plus we have cited all of the other representations in

24   the complaint where we say, hey, these contain oil, these

25   contain oil and they are not pure hardwood.  We have five or

1    six.  We also cited to some of the briefing.  If Your Honor

2    needs to go back and look at it and the certification, we

3    have already cited to where this has already been disputed

4    and Judge Jenkins made those findings after hearing those

5    arguments, so this has been part of the case the whole time.

6           This statement, 100-percent pure hardwood pellets,

7    and if this is false and if our complaint is not

8    artificially limited based on the say-so of counsel, they

9    lose their motion for summary judgment because every single

10   one of their arguments depends on those two issues, every

11   single one of them.

12          Under the Utah Consumer Sales Practices Act --

13   there are basically two types of relief under the Utah

14   Consumer Sales Practices Act, and to get damages in a class

15   action, which raises a whole other argument, you have to

16   prove that you suffered actual damages as a result of the

17   violations of the Utah Consumer Sales Practices Act, but for

18   injunctive, declaratory and ancillary relief there is no

19   such requirement.  Indeed, Judge Jenkins expressly

20   recognized that proposition in his order.

21          If Traeger misrepresented the contents of its

22   pellets, which it did -- indisputably we have the recipe, we

23   have 30(b)(6) deposition testimony, we have their patent

24   application, we have interrogatory responses and every

25   single thing says they have something other than 100-percent

1    pure hardwood in their pellets.  They have an affidavit,

2    that we have called a sham affidavit here and we have

3    objected to it, that says, yeah, we put other stuff in but

4    they are still 100-percent hardwood, which just makes no

5    sense and needs to be rejected.

6        Then going through the Utah Consumer Sales

7    Practices Act, they argue that, hey, we have no evidence

8    that their acts were knowing or intentional.  That is one of

9    the requirements under the Utah Consumer Sales Practices

10   Act.  You can't knowingly or intentionally do this.  They

11   put in an affidavit saying, well, we didn't think we were

12   deceiving anyone and it wasn't knowing or intentional

13   because these pellets give predominantly the flavor of the

14   named woods, and so they are 100-percent hardwood and we

15   didn't know we were deceiving people.  That is not how

16   knowing and intentional is considered under Utah law.

17       With knowingly there is a statute on it.  He is

18   aware of the nature of his conduct of the existing

19   circumstances.  That is Utah Code 76-2-103(2).  So was

20   Traeger aware of the nature of its content or the existing

21   circumstances?

22       In our undisputed facts we showed that Traeger

23   created the recipe for the pellets, they own the whole

24   entire manufacturing process, they also created the

25   marketing at issue and they created this statement, the

1   100-percent pure hardwood pellets, while knowing that their

2   pellets actually contain other ingredients and that they are

3   not hickory and they are not mesquite.  So the knowing

4   standard is not that they knew they were intentionally

5   deceiving, which is how they try to frame it, but that they

6   just knew the existing circumstances, and that we have

7   established with our undisputed facts.

8           In fact, I think we can go further and show that

9   it was deceptive, intentionally deceptive, but we don't have

10  to go there and that is an alternative basis, right, knowing

11  or intentional, but intentional is when it is a conscious

12  objective or desire to engage in the conduct.  Was it their

13  desire to engage in the marketing conduct that they did and

14  to represent that it was 100-percent pure hardwood hickory

15  or mesquite when it wasn't?  Absolutely.  That is

16  established by the undisputed fact that they knew what was

17  in the pellets and that they were intentionally marketing

18  them.  We have pointed out that they created the packaging

19  and it is all undisputed that they created the packaging and

20  they created the pellets and they applied for patents and

21  they created the recipes and they run the mills that create

22  the pellets.

23          In fact, if you read the back of the packaging it

24  talks about how their pellets are better, because in

25  contrast with other wood pellet suppliers who don't own

1    their own wood pellet production facilities, Traeger can

2    guarantee that nothing harmful is cooking your food.  They

3    knew the entire process.

4            THE COURT:  Are you alleging that there was

5    something harmful?  I thought you were alleging that they

6    misrepresented the ingredients?

7            MR. SCOTT:  We are not alleging that it was

8    necessarily harmful and that is not part of our case, just

9    that they are misrepresenting it and they knew it because

10   they controlled the whole entire process.  In fact, they

11   bragged about controlling the whole entire process.

12           We meet the standard for knowing and intentional

13   violations -- knowing and intentional acts, which do end up

14   violating the Utah Consumer Sales Practices Act.  We don't

15   have to show that Traeger knew that their acts violated the

16   Utah Consumer Sales Practices Act, just that they knew and

17   were aware of the nature of the conduct or the existing

18   circumstances.  It is a low bar, Your Honor.

19           All that said, the Utah Consumer Sales Practices

20   Act actually has another provision that is interesting.  If

21   this misrepresentation was based on a bona fide error, which

22   is basically what they are saying, oh, we thought it was

23   100-percent pure hardwood because it tasted like it, there

24   is still a violation of the Utah Consumer Sales Practices

25   Act because it says if it is a bona fide error, the statute

1    limits damages to the amount in which the supplier was

2    unjustly enriched by the violation.  So even if it was

3    unintentional and even if it was unknowing and based on an

4    error --

5            THE COURT:  You're saying it does not affect

6    liability but it may limit damages?

7            MR. SCOTT:  Exactly.  It sets the floor for

8    damages and unjust enrichment.  That is Utah Code

9    13-11-19(4)(c).  Even if Traeger is right that they didn't

10   know or intentionally do this, it is just an issue of the

11   amount of damages.

12           Traeger argues that we had to prove causation

13   under the statute.  Again, they rely on Section 13-11-19(3)

14   and it says whether a consumer seeks or is entitled to

15   recover damages -- wait.  They don't rely on that.

16           We rely on this portion that says whether a

17   consumer seeks or is entitled to recover damages or has an

18   adequate remedy at law he may bring a class action for

19   declaratory judgment, an injunction, and appropriate

20   ancillary relief.  That contrasts with the actual damages

21   that have to be as a result of a violation of the Act.

22           We assert claims and we say, okay, these

23   misrepresentations, the hickory 100-percent pure hardwood

24   and mesquite 100-percent pure hardwood misrepresentations

25   violate the text of the Utah Consumer Sales Practices Act

1    and the administrative rules promulgated under the Utah

2    Consumer Sales Practices Act.

3            Traeger says, hey, hey, hey, you can't rely on the

4    text of the statute.  That is true for the damages claim

5    only, because Section 13-11-19(4)(a) states a consumer who

6    suffers a loss as a result of the violation of this chapter

7    may bring a class action for the actual damages caused by an

8    act or practice specified as violating this chapter by a

9    rule adopted by the enforcing authority.  So for damages, if

10   Shady Grove and its progeny don't eliminate that provision,

11   because it is inconsistent with Rule 23 -- if, however, it

12   doesn't, we would be limited to violations of the rules, but

13   that does not apply to claims for injunctive, declaratory

14   and ancillary relief.  So we argue, based on that, that

15   these misrepresentations violate both the plain language of

16   the statute and the plain language of the rule.

17           Specifically -- my binder just popped so I'm going

18   to have a mess here for the rest of the time and I

19   apologize.  These big binders get you.

20           THE COURT:  You need better binders.

21           MR. SCOTT:  Yes, I know.  I need to invest in a

22   better binder company somehow.

23           All right.  It will work out.

24           If we go back to our motion for summary judgment,

25   we lay out the specifics of what was violated.  It is a

1    violation of the plain language of the Utah Consumer Sales

2    Practices Act to indicate that the subject of a consumer

3    transaction has sponsorship, approval, performance,

4    characteristics, accessories, uses or benefits --

5            THE COURT:  Slow down a little, when you read

6    particularly.

7            MR. SCOTT:  Sorry.  The main issue is that it is a

8    violation to indicate that the subject of a consumer

9    transaction has, and this is relevant here, has

10   characteristics, if it has not.  So the characteristics that

11   Traeger claims the pellets have is that they are hickory

12   100-percent pure hardwood or mesquite 100-percent pure

13   hardwood when they are not.

14           Again, no matter how you break that down it is

15   false.  If you read the whole thing or if you break it into

16   parts, it is always false.  They are misrepresenting the

17   characteristics of the pellets.  That is 13-11-4(2)(a).

18           Now, 13-11-4(2)(b) says it is a violation to

19   indicate that the subject of a consumer transaction is of a

20   particular standard, quality, grade, style or model if it is

21   not.  So to represent that the pellets are mesquite or

22   hickory when they are not, or 100-percent pure hardwood when

23   they are not, or the combined phrase of hickory 100-percent

24   pure hardwood or mesquite 100-percent pure hardwood when

25   they are not, that is a violation of the statute.  That

1    entitles plaintiffs to injunctive, declarative and ancillary

2    relief at a minimum.

3            The rules promulgated under the Utah Consumer

4    Sales Practices Act echo a lot of this language.  These are

5    the ones what are applicable to both the non-damages relief

6    and damages.  One of them, which is Utah Administrative Code

7    R152-11(3)(b) Section 5 says a supplier misrepresents the

8    price, savings, quality or ownership of any goods sold, and

9    1-B of that same section says it is a violation to deliver,

10   offer consumer commodities which are unusable or

11   impracticable for the purposes represented or a material

12   difference from the offered consumer commodity.  So

13   representing something is 100-percent pure hardwood and

14   giving them something else is a violation of the rules.

15           We can establish here pretty clearly a violation

16   of both the plain language of the statute and the rules.

17   Under those circumstances we are entitled to summary

18   judgment that the packaging violates the Utah Consumer Sales

19   Practices Act.

20           THE COURT:  What else do you want to tell me?

21           MR. SCOTT:  Well, I want to talk a little bit

22   about the California law, and if you have too many questions

23   I will have to defer to my colleague.

24           What we are alleging with respect to the

25   California statutes is similar because it contains similar

1    language.  These are consumer statutes.

2        THE COURT:  They are not materially different?

3        MR. SCOTT:  There are some material differences

4    and I will try to go over those.

5        The ones that are the closest are the C.L.R.A.

6    That is probably the closest to the Utah Consumer Sales

7    Practices Act, but we have also alleged claims under the

8    Unfair Competition Act and the False Advertising Law of

9    California.

10        If we look at -- sorry.  I'm all torn up here.

11        So the Unfair Competition Law incorporates by

12    reference claims under the False Advertising Law, so a

13    violation of the False Advertising Law also violates the

14    Unfair Competition Law.  So we take that and we say, okay,

15    what does the False Advertising Law say, the F.A.L., and we

16    have referenced it, and it says the F.A.L. prohibits any

17    advertising device which is, quote, untrue or misleading.

18        So if these statements on the packaging are found

19    to be untrue, which they should be, it is a violation of the

20    fair advertising law in California and the Unfair

21    Competition Law.  So we get a two for one on that one.

22        The distinguishing factor between false and

23    misleading is if something is true but misleading, it is

24    still a violation of the law.  That is where Traeger focuses

25    all of its energy by saying, well, you have to show that it

1    is misleading and --

2              THE COURT:  It could be just one or the other or

3    both?  That is your argument, correct?

4              MR. SCOTT:  Exactly.

5              Since it is false, we meet that.  It is

6    misleading, though, because there is no other way to

7    interpret these statements.  I mean 100-percent pure

8    hardwood -- there is no way to interpret that any other way

9    other than saying it is nothing other than hardwood.  It is

10   misleading.

11             Again, going to the comparison of an unambiguous

12   contract, this is not a case where you say reasonable people

13   could disagree on what this means.  There is only one

14   interpretation and it is that it is 100-percent pure

15   hardwood and that is why it is false.

16             In California the C.L.R.A., which is the one that

17   is probably most analogous to the Utah Consumer Sales

18   Practices Act, prohibits the same kind of thing like

19   representing that a consumer good has characteristics that

20   they do not have.  That is California civil code --

21             THE COURT:  So if the Utah statute is violated,

22   then the C.L.R.A. is violated?  That is your argument?

23             MR. SCOTT:  Correct.

24             Again, this will sound very familiar, because it

25   also prohibits representing that goods are of a particular

1   standard, quality or grade if they are another.

2          This is a little bit different, and we do get into

3   this a little bit in our briefing under the Utah Consumer

4   Sales Practices Act rules, and in particular advertising

5   goods or services with the intent not to sell them as

6   advertised.  So they are advertising them as 100-percent

7   pure hardwood and they are not selling 100-percent pure

8   hardwood and that violates the C.L.R.A., representing that

9   the subject of a transaction has been supplied in accordance

10  with a previous representation when it is not.  So

11  representing that it is 100-percent pure hardwood and

12  providing mesquite 100-percent pure hardwood or hickory

13  100-percent pure hardwood and then providing oak and alder

14  mixed with oils is a violation of the C.L.R.A.

15         There is some dispute in the cases and there are

16  inconsistent cases on what has to be shown, materiality

17  under the California statutes, because for damages and other

18  relief we have to show materiality.  We would argue two

19  things.  Well, three, actually.

20         Number one, that it is material as a matter of

21  law, these statements.  It is the biggest writing on the

22  package and it appears five times on the package.  If it

23  wasn't material and Traeger didn't know it was material, why

24  did they emphasize this more than literally anything else?

25  Nothing else on this packaging is repeated even close to

1    five times, yet that is what they have here.  Obviously if

2    you were going to buy mesquite pellets you expect them to be

3    mesquite.

4          Number two, there are cases under California law

5    saying that for class actions, only the named plaintiff has

6    to show materiality as to him and that that is enough to

7    survive a class action.  We have cited those cases and they

8    have cited cases suggesting that there is more, but those

9    are usually in the actual reliance context or the misleading

10   context, which we don't have to show here when the

11   statements are actually false.

12         Additionally, Traeger when they were deciding what

13   to put on their packaging, they did some consumer surveys

14   and they tried to find out what would be important for

15   consumers to see on the packaging.  They asked a whole

16   variety of questions.  One of the questions they asked is --

17   they had like ten different categories and they said is this

18   the reason you buy, not important, or I don't know, and

19   there are a couple of other categories.

20         One of the things they asked customers to decide

21   whether it was important was whether the pellets were

22   100-percent pure hardwood.  That might sound familiar

23   because that is exactly what ended up on the package, and I

24   can tell you why, because 99.25 percent of consumers in that

25   survey, Traeger's own survey found that that was either

1    important or the reason they buy the pellets.  So Traeger's

2    own data shows it was material.  That was more material than

3    any of the other factors they asked consumers about.  None

4    of them had the combined percentages of 99.25 or higher.

5    Not even close.  It was 132 out of 133 respondents that said

6    it was at least important.  So then we say, okay, now we

7    understand why they put it on the bag five times.  Nothing

8    was more material to consumers.

9           Now, they put it on the bags without regard to

10   whether it was true or not, which is why we are here, but

11   this is certainly material under these statutes for those

12   three reasons.

13          Again, the Utah law does not require any of that

14   showing to show a violation.

15          I'm happy to answer any other questions you have,

16   Your Honor.

17          THE COURT:  I don't have anymore right now.

18          Thank you, Mr. Scott.

19          Mr. Speyer.

20          MR. SPEYER:  Thank you, Your Honor.  It is nice to

21   meet you in person.

22          THE COURT:  Thank you.

23          MR. SPEYER:  Your Honor, it is stunning to me that

24   essentially Mr. Scott's entire presentation was based on the

25   assertion that the claim 100-percent pure hardwood is a

1    claim that is alleged in this case.  But before I get into

2    that and just to level set, I want to discuss why even if

3    100-percent pure hardwood, that statement were to be in this

4    case, there would still be a disputed issue of fact.  That

5    is because as the declarations that Traeger has submitted

6    show, the wood in Traeger's bags is hardwood as opposed to

7    softwood.  That is an important distinction for barbecue

8    owners because hardwood burns much longer and gives the

9    barbecue owner a much more even burn.

10         THE COURT:  What is your claim about what it means

11    to say 100-percent pure hardwood?  What does that mean do

12    you think?

13         MR. SPEYER:  Well, there are two answers to that,

14    Your Honor.  It is 100-percent pure hardwood as opposed to

15    softwood.  There is no dispute that there is no softwood in

16    the bag.  That is number one.  Number two, we heard a lot

17    about how the bag is 22-percent oils.  Okay.  It is

18    apparently, according to them, 78 percent wood and

19    22-percent oil.  That is just flat-out wrong.  By weight --

20    by weight, when you weigh the bag with just the hardwood

21    pellets and then you add in the oil, which are the only

22    ingredients, the oil represents less than one-half of one

23    percent of the bag by weight.

24         So we're talking about a bag that is 99.5-percent

25    hardwood, which in other contexts, other government contexts

1    like the F.D.A. is simply a rounding error.  The F.D.A.

2    allows you to say something has zero calories even if it has

3    half a calorie.

4            We need to put all of that aside, Your Honor,

5    because the plaintiffs are seeking summary judgment on a

6    claim that is not in the complaint and not part of this

7    case.  The complaint is focused exclusively on the claim

8    that Traeger misrepresented the type of wood in its pellets.

9    Traeger said this contains mesquite wood, and that is the

10   allegation, when it does not.  The allegation is that

11   Traeger said that this represents hickory wood, when it does

12   not.

13           Now, the plaintiffs' contention that their

14   complaint encompasses the very different claim that the

15   pellets are 100-percent pure hardwood, okay, and they make

16   this contention despite three undisputed facts.  Number one,

17   the complaint does not allege anywhere that the phrase

18   100-percent pure hardwood is false or deceptive.  Number

19   two, the complaint does not allege anywhere that any

20   plaintiff relied on the 100-percent pure hardwood statement

21   or that the statement caused any plaintiff to buy the

22   product.  Number three, the complaint does not allege

23   anywhere that the 100-percent pure hardwood statement

24   violated any consumer protection statute or any other law.

25           Now, under basic rules of pleading, Your Honor, if

1    you miss out on one of those allegations you have failed to

2    state a claim.  The plaintiffs' claim is zero for three on

3    those allegations.  What is more is that the plaintiffs in

4    their reply admit, as they must under basic rules of

5    pleading, that they were required in their complaint to,

6    quote, identify the deceptive statements that Traeger made

7    on its packaging, and that is at page 10 of their reply,

8    Your Honor, and the complaint nowhere identifies the

9    statement 100-percent pure hardwood as a false or deceptive

10   statement and that failure is dispositive.

11           Simply put, the complaint does not give Traeger

12   the fair notice to which it is entitled that they are

13   asserting a claim based on 100-percent pure hardwood.  There

14   is just no way a reasonable reader can review that complaint

15   and come away saying, yes, they are clearly saying that the

16   phrase 100-percent pure hardwood is false.  There is no way

17   to do it.

18           Let me put it another way, Your Honor.  If you

19   were filing a lawsuit because you believed a company had

20   misrepresented its product as 100-percent pure hardwood,

21   what you do is pretty straightforward.  You would allege

22   that the statement 100-percent pure hardwood is false or

23   deceptive, and you would allege that the plaintiffs relied

24   on that statement, and you would allege that that statement

25   violated some law.

```
 1              THE COURT:  Should I give them leave to amend?

 2              MR. SPEYER:  You should not, Your Honor.  I can

 3    get to that down the line or I can get to that right now.

 4              THE COURT:  You decide.

 5              MR. SPEYER:  Okay.  Thank you, Your Honor.

 6              Instead of saying anything about the alleged

 7    misrepresentation 100-percent pure hardwood, the complaint

 8    is focused exclusively on the claim that Traeger

 9    misrepresented the type of pellets, the type of wood in its

10    pellets.

11              Let me quickly review the allegations.  We're

12    going to put something up on the screen.

13              Is that okay, Your Honor?

14              THE COURT:  Sure.

15              MR. SPEYER:  Would you also like hard copies or is

16    the screen sufficient?

17              THE COURT:  Do you have hard copies?

18              MR. SPEYER:  I do have hard copies for both you

19    and counsel.

20              THE COURT:  Let's do hard copies, too.

21              MR. SPEYER:  Okay.

22              THE COURT:  This illustrates one of the joys of

23    dealing with gizmos.

24              MR. SPEYER:  That is the bane of my existence,

25    Your Honor.
```

```
1                THE COURT:  And everyone else's.

2                MR. SPEYER:  Well, kids are okay.

3                THE COURT:  Yeah, kids are okay.

4                MR. SPEYER:  We can just do this on the papers.

5                So can you go back to the first page, please,

6     Sheila, just the cover page?

7                Your Honor, this is the operative complaint.

8                Let's go to the first paragraph, Sheila.  The

9     first paragraph, second sentence, as set forth before, the

10    defendant wrongly and unfairly deceived the public and its

11    customers --

12               THE COURT:  You need to slow down if you're going

13    to read.

14               MR. SPEYER:  Yes, Your Honor.

15               As set forth below, the defendant wrongfully and

16    unfairly deceived the public and its customers by

17    misrepresenting that its wood pellets comprised one type of

18    wood when in fact the pellets comprised a different type of

19    less expensive wood containing flavored oils to masquerade

20    as more expensive sought after grilling woods.

21               There is nothing there about the phrase

22    100-percent pure hardwood being false.

23               Can we go to the next page, please?

24               Paragraph eight.  In marketing and selling its

25    wood pellets, the defendant uniformily represented that its
```

1    wood pellets comprised a specific type of wood.

2            Paragraph ten.  The defendant's representations

3    about the wood pellets are false.  Nothing about 100-percent

4    pure hardwood.

5            Can we go to paragraph 19, please, Sheila.

6            There we go.

7            Paragraph 19.  Plaintiff Yates would not have

8    purchased the defendant's mesquite barbecue wood pellets had

9    he known that they did not comprise mesquite wood.  Nothing

10   about 100 percent pure hardwood.

11           Can we go to paragraph 96, please.

12           I'm sorry.  Let's skip that.

13           Let's go to paragraph 112.

14           Paragraph 112.  Here are the common questions of

15   law and fact that the plaintiffs say exist.  A, what

16   different types of wood comprised the pellets; B, whether

17   the defendant misrepresented that Traeger pellets contain or

18   comprise certain types of wood; C, whether the defendant's

19   representations about the types of wood contained in and

20   comprising the Traeger pellets were false, misleading or

21   likely to deceive; E, whether the type of wood comprising

22   the Traeger pellets is a material fact to consumers.  Again,

23   nothing about 100 percent pure hardwood.

24           Let's go to the causes of action themselves.

25           Can you go to page 25, please, Sheila.  Paragraph

1    120.   There you go.

2         First cause of action.  Let's go to the next page,

3    Sheila.

4         Paragraph 123.   The defendant has violated Utah

5    Code Section 13-11-4(2)(a).

6         Paragraph 124.   Specifically by claiming that the

7    Traeger pellets comprise or primarily comprise certain types

8    of wood when the Traeger pellets do not comprise or

9    primarily comprise those types of woods the defendant has

10   violated the Utah Act.

11        Your Honor, I will represent to the Court that the

12   second, third and fourth causes of action are completely in

13   line with this and nothing about how the 100-percent pure

14   hardwood is a false statement.  What the plaintiffs say is,

15   well, there are instances in the complaint where we talk

16   about how oils are added to the product.  Okay.  That is

17   their justification for how they think 100-percent pure

18   hardwood is alleged in the complaint.  But each time they

19   talk about oils being in the product, it is in the service

20   of explaining how Traeger achieves a mesquite or hickory

21   flavor without mesquite or hickory wood.

22        The defendants are not required to be mind

23   readers, Your Honor.  If the plaintiffs had actually wanted

24   to state a claim based on 100-percent pure hardwood, they

25   would have asserted it and it would have been very simple.

1       Another point, Your Honor, is that this case by

2   the plaintiffs' own admission is limited to two flavors of

3   Traeger pellets, mesquite and hickory, yet every single

4   flavor of Traeger pellets contains oil, and every single

5   flavor of Traeger pellets makes the same statement,

6   100-percent pure hardwood.  If the plaintiffs actually were

7   suing over the 100-percent pure hardwood statement there

8   would be no reason for them to limit their case to mesquite

9   and hickory.

10      Now, also, the plaintiffs claim that regardless of

11  the complaint, this is how the case has been litigated.  The

12  case has been litigated on the assumption that 100 percent

13  pure hardwood is part of the case.  Your Honor, the exact

14  opposite is true.

15      Can we go to the next document, please.

16      Your Honor, I'm now showing you a page from the

17  plaintiffs' opposition to Traeger's first motion to dismiss.

18  The second sentence is highlighted.  For at least the last

19  several years Traeger has sold bags of pellets that purport

20  to be specific types of wood like mesquite or hickory, but

21  in reality are made with cheaper oak and alder woods and

22  flavored with oils.  No mention of this supposed 100-percent

23  pure hardwood claim.

24      Can we go to the next document, please.

25      Your Honor, this is the defendant's opposition to

1    the second motion to dismiss we filed.

2              The first page of this, please, Sheila.

3              Once again, the exact same description of the case

4    in their own pleading, Your Honor.  For at least the last

5    several years Traeger has sold bags of pellets that purport

6    to be specific types of wood like mesquite and hickory.

7              Let's go to the next document.

8              The next document, Your Honor, is the plaintiffs'

9    own expert report.  How do their own experts describe the

10   case?

11             Let's go to the next page, please.

12             You see here the case overview.  Paragraph 15.

13   The defendant represents that its wood pellets contain a

14   specific species of wood, such as mesquite, hickory, cherry

15   or apple in marketing its wood pellets.  Allegedly the

16   defendant's claims are false and the pellets they sell do

17   not primarily comprise the identified wood.  No mention of

18   this alleged 100-percent pure hardwood claim.

19             Now, the first time they brought up this idea that

20   100-percent pure hardwood is in the case is in their class

21   certification motion and, yes, ever since then they have

22   repeatedly asserted that 100-percent pure hardwood is in the

23   case.  Every time they made that claim, Your Honor, we

24   showed very clearly that it is not in the complaint and it

25   could not be part of the case, and it simply cannot be the

1    case that a claim that is not in the complaint somehow

2    becomes part of the complaint simply because the plaintiffs

3    keep asserting a false statement.

4            THE COURT:  Did Judge Jenkins say anything about

5    this?

6            MR. SPEYER:  Judge Jenkins did not.

7            Your Honor, an amendment after four years of this

8    case, I think as I have just gone through, would be severely

9    prejudicial and would force us to relitigate this entire

10   case.  We would have to go through pleading practice again,

11   we would have to go through fact discovery again, because

12   Traeger did not depose the plaintiffs on this 100-percent

13   pure hardwood claim, and we would have to go through expert

14   discovery again, because both sides' experts submitted

15   reports based solely on the claim that Traeger

16   misrepresented the type of pellets, the type of wood in its

17   pellets and there is nothing about this 100-percent pure

18   hardwood claim in the expert reports.

19           Since we depended on the expert reports in

20   opposing our class certification motion, the class

21   certification motion would have to be redone.  Essentially

22   the entire case would have to be redone, and I would note

23   that the plaintiffs have not even sought leave to amend.

24           Just to put a bow on this 100-percent pure

25   hardwood claim, Your Honor, I have never heard of a fraud or

1    false advertising case where the alleged false statement is

2    not identified in the complaint, where the plaintiffs don't

3    claim that they relied on the false statement, and where the

4    complaint does not even assert that the false statement

5    violated any laws.

6          Putting the 100 percent pure hardwood aside, Your

7    Honor, and focusing only on the claim that is in the case,

8    whether Traeger misrepresented the type of pellets, the type

9    of wood in its pellets, I would like to explain why summary

10   judgment should be denied.

11         On the Utah Act claim, Your Honor, the Court

12   should deny summary judgment for two reasons.  The first

13   reason is that causation is an essential element of a claim

14   under the Utah Act and the plaintiffs do not dispute that

15   they have no evidence of causation.  In the language of the

16   statute, the consumer must show loss, quote, as a result of,

17   close quote, the statutory violation.  That is Section

18   13-11-19(4)(a).

19         The plaintiffs don't contest that they have

20   provided no evidence of causation under the statute.  Their

21   motion does not even mention it.  The plaintiffs also do not

22   dispute that in order to recover damages in this case, that

23   they have to prove causation.  Therefore, there is no

24   dispute, Your Honor, that summary judgment must be denied on

25   the plaintiffs' Utah Act damages claim for failure to

1    establish causation.

2            Now, that leaves their claim for injunctive relief

3    under the Utah Act.  The plaintiffs' say, well, we don't

4    need to prove causation under the Utah Act if we are just

5    seeking injunctive relief, but they cite no case law for

6    this proposition.  If you think about it, Your Honor, if

7    their argument were right, then anyone could sue for

8    injunctive relief under the statute, even if that person

9    never even saw the alleged false advertising, and even if

10   the alleged false advertising did not induce the purchase.

11           If you take causation out of the equation you

12   would convert the Utah Act into a private attorney general

13   statute.  That would mean that Utah's consumer protection

14   statute is the broadest consumer protection statute in the

15   country.  I'm familiar with consumer protection statutes

16   throughout the country, but I'm not familiar with any

17   statute that allows a private attorney general action where

18   you don't have to show that you even saw the alleged

19   advertising in order to state a claim.

20           Now, the plaintiffs' only argument on this point

21   is to quote the statute itself to the effect that a consumer

22   may bring an action for injunctive relief even if he is not

23   seeking damages, but damages and causation are obviously two

24   different elements, Your Honor.  They are separate elements

25   and they must be separately satisfied.

1        The way to illustrate that is a plaintiff can of

2   course demonstrate causation, that is that the false

3   statement caused the purchase without having any damages,

4   without being able to prove any damages.  So they are two

5   different elements.  So my point on causation, Your Honor,

6   is that it is an essential element of any claim under the

7   Utah Act and the plaintiffs do not contest and they have

8   submitted no evidence on it and, therefore, summary judgment

9   under the Utah Act should be denied.

10       The second and independent reason why summary

11  judgment under the Utah Act should be denied is because

12  intent to deceive is an essential element of a claim under

13  the Act.  The plaintiffs in their papers did not dispute

14  that they had no evidence of intent to deceive.  The Utah

15  Supreme Court in the Rawson vs. Conover case that we have

16  cited to the Court, has made clear that the Utah Act

17  requires that the defendant, quote, knowingly or

18  intentionally deceived the consumer.  Plaintiffs have

19  proffered no such evidence.

20       Instead, the plaintiffs claim they don't need to

21  show an intent to deceive.  They only need to show that

22  Traeger engaged in intentional or knowing conduct, but they

23  cite no case law to support that assertion and they have no

24  response to the Utah Supreme Court case holding that an

25  intent to deceive is required.  That is why the Court should

1    deny summary judgment for a second and independent reason on

2    the Utah Act claim.

3         Quickly turning to the California claims, Your

4    Honor, again, there are two reasons why the Court should

5    deny summary judgment.  First, the plaintiffs have failed to

6    establish the essential element of reliance.  Plaintiffs

7    concede in their motion papers at page 10 that reliance is

8    an essential element of all of the California statutes under

9    which they are proceeding.  They then argue that reliance

10   can be proven by showing that the statement at issue was

11   material.

12        But let's assume that you can establish reliance

13   by showing that the statement is material, that is,

14   important to a consumer in making his or her purchase.

15   Okay.  Even assuming that you can show reliance via

16   materiality, Traeger submitted an extensive expert report on

17   just this subject.  Traeger presented consumer surveys

18   consisting of 800 consumers showing that what consumers

19   found important is the flavor and consumers did not find

20   important the type of wood.  So if the flavor conveys

21   mesquite or hickory, that is what is important to the

22   consumer.

23        We have a 200-page expert report that shows that

24   on the materiality issue at the very least there is a

25   disputed issue of fact.

1          In fact, the plaintiffs have submitted no evidence

2     showing that the type of wood in the pellets is material.

3     There is nothing, so it would be perverse to award summary

4     judgment to the party who has produced no evidence on this

5     issue against the party that has produced evidence on this

6     issue.

7          Now, the plaintiffs in one line in their reply

8     brief attack Traeger's expert report and say it is, quote,

9     flawed and misdirected, close quote.  Your Honor, those are

10    pure conclusions backed up by nothing.  Those conclusions

11    are worthless and they do not come close to establishing

12    what you would need to exclude the expert report under the

13    Daubert standards.

14         Now, the plaintiffs also have cited and cited to

15    you today the court's class certification decision

16    concerning materiality, but that decision did not consider

17    Traeger's expert report.  Indeed, Judge Jenkins expressly

18    left consideration of Traeger's expert report for another

19    day.  He said, quote -- let me back up.

20         In addition to the fact that Judge Jenkins did not

21    consider that report, the law is clear and not contested by

22    the plaintiffs and, as you noted, the findings made at the

23    class certification stage are for purposes of class

24    certification only and are not binding at later stages.

25    Indeed, Judge Jenkins in his certification order wrote that,

1    quote, this is not the time to conclusively decide the

2    merits, close quote.  That is at page 9 of his ruling at the

3    top of the page.

4           So on materiality, which is an essential element

5    under California law, there is at the very least a disputed

6    issue of fact requiring a denial of the plaintiffs' summary

7    judgment motion.

8           The second independent reason why summary judgment

9    is inappropriate under the California statutes is that the

10   plaintiffs have failed to establish the essential element

11   that a reasonable consumer would likely be deceived by the

12   alleged misrepresentation.  Here the only alleged

13   misrepresentation is that Traeger misrepresented the type of

14   wood in its pellets.

15          Now, also under California law the plaintiffs must

16   show the likelihood of deception with evidence showing that

17   a significant portion of consumers could likely be misled.

18   The plaintiffs in their papers do not dispute that they have

19   to prove with evidence a likelihood of deception, and those

20   two propositions require denial of their summary judgment

21   motion on the California claims, and that is because they

22   have submitted no evidence showing that the reasonable

23   consumer would likely be deceived into thinking that the

24   bags contain primarily mesquite or hickory wood.

25          Now, the plaintiffs with their reply did submit 75

1   pages worth of evidence, okay, but the problem is none of

2   that evidence is relevant to the only claim that is in the

3   case, whether Traeger misrepresented that the bags contain

4   mesquite or hickory wood when they do not.  What we have

5   said earlier and what we have shown in our declarations

6   opposing summary judgment, Your Honor, is that the phrase

7   that they quote, mesquite, 100-percent pure hardwood can

8   certainly be construed as true, because there is no debate

9   that the bags give the consumer a hearty mesquite favor and,

10  we believe, and we believe the facts back us up, that the

11  pellets are made of pure hardwood.

12        So the likelihood of deception depends on whether

13  they can show that a reasonable consumer would likely be

14  deceived by those statements into thinking that the bags

15  contain not just pellets that give you the flavor of

16  mesquite, but that the pellets actually contain pure

17  mesquite or pure hickory and they have no evidence to that

18  effect, Your Honor.

19        Now, after the plaintiffs submitted their evidence

20  in their reply, Traeger filed an objection to that evidence.

21  The objection showed that none of the evidence the

22  plaintiffs submitted was relevant to the only

23  misrepresentation alleged in the case.  The plaintiffs then

24  filed their response to the evidentiary objections and that

25  response was very interesting, Your Honor, because that

1    response did not dispute that they failed to submit any

2    evidence concerning the only alleged misrepresentation in

3    this case.

4            Now, it is true, Your Honor, that some of the

5    evidence they submitted consisted of anonymous customer

6    complaints that they apparently took off of the internet,

7    and it is true that about ten of these anonymous complaints

8    complained about the type of wood in the pellet bags, but

9    not even the plaintiffs contend that those customer

10   complaints are relevant here or can satisfy their burden on

11   summary judgment.

12           That is because of two factors.  First, the law is

13   crystal clear that a few random complaints do not prove

14   anything about what the reasonable consumer is likely to

15   believe and do not establish that a significant portion of

16   consumers would hold that belief.  We supported that with

17   eight cases at pages 5 and 6 of Traeger's objections to the

18   newly submitted evidence.  The plaintiffs don't dispute that

19   proposition that a few random comments cannot prove

20   anything.

21           The second reason, Your Honor, is that those

22   internet comments made anonymously are inadmissible because

23   they are unauthenticated and they are hearsay.  On summary

24   judgment, as Your Honor knows far better than I, only

25   admissible evidence may be considered.

1          The plaintiffs do not dispute and put up no

2    opposition in their response to Traeger's objections with

3    respect to the point that those consumer complaints cannot

4    be considered because they are inadmissible.

5          Your Honor, that is all that I have unless you

6    have questions.

7          THE COURT:  I don't.  Thank you, Mr. Speyer.

8          MR. SPEYER:  Thank you.

9          THE COURT:  Mr. Scott, do you have rebuttal?

10         MR. SCOTT:  Thank you, Your Honor.

11         One thing that we didn't hear is any citation to

12   law or any argument other than Mr. Speyer's own say-so that

13   we have to list every single way a statement is

14   misrepresented or is false to plead a claim based on that

15   misrepresentation.

16         We have identified the whole statement.  If you

17   look at page 11 of our complaint it says in paragraph 61,

18   the product packaging also stated mesquite, 100-percent pure

19   hardwood pellets, premium 100-percent food grade hardwood

20   pellets, grill it, flavor it.  So we have identified the

21   statement and we have identified at least one way it was

22   false, which is meeting the standard under Rule 9(b) which

23   require the heightened pleading standard for fraud based

24   claims, which these arguably are.

25         We have met the pleading standard, but there is no

1    law saying, well, we didn't specifically call out that just

2    this hickory statement was misleading.  It is.  It does not

3    contain hickory.  It does not contain mesquite.  We didn't

4    specifically call out pure.  We didn't specifically call out

5    hardwood.  We said the whole thing is misleading.  So

6    nothing in the law requires us to say it is misleading if

7    you read it this way and it is misleading if you read it

8    that way.  It is misleading if you read just these two words

9    together or if you read the whole thing.  We have said that

10   this is the misleading statement.  We have alleged in our

11   causes of action --

12           THE COURT:  You're saying that you don't need to

13   amend to --

14           MR. SCOTT:  No, Your Honor.

15           If you're inclined to deny our motion on that

16   basis we would ask you to allow us to amend.  If you were

17   here during the certification hearing you would have a

18   strong feeling of deja vu, because a lot of this was

19   discussed with Judge Jenkins.  You can see it in the

20   briefing on the first certification motion, that they made

21   these exact same arguments.  They said, well, that was the

22   first time it ever came up.  They also said it was the first

23   time injunctive relief ever came up and we pointed back to

24   the complaint, specifically referencing injunctive relief.

25           Here we have also identified in our reply issues

1    where it has come up in discovery where we are asking their

2    30(b)(6) witnesses about this.  They say stuff like, sure,

3    100-percent alder wood is what the pellets are made of in

4    certain areas, not 100-percent mesquite, but then they go on

5    and talk about in the same sentence one gallon of soybean

6    oil or 1.67 gallons of mesquite oil.

7           Mr. Speyer, on his own say-so, again, said that

8    the 22-percent number is wrong.  Now, we cited to the patent

9    application and the 30(b)(6) deposition where the 35

10   parts lubricant and one part wood oil and 130 part wood

11   particles is referenced.  36 out of 166 is approximately

12   22 percent.  So he is saying that, oh, it is less than one

13   percent, but the evidence that we have put in and is

14   undisputed shows that it is much higher than that.

15          It does not matter.  100-percent pure has meaning.

16   100-percent pure hardwood has meaning.  Mesquite 100 percent

17   pure hardwood has meaning.  Any way you read it, it is

18   false.  Our complaint, like I said, references the whole

19   statement and we give one specific example of how reading it

20   is false saying, hey, anyone that reads this is going to

21   think this is actually mesquite wood when it is not.

22          Then we also say -- for the Utah Consumer Sales

23   Practices Act we say the defendant's material false and

24   misleading misrepresentations also violate portions of the

25   Utah Consumer Sales Practices Act including 13-11-4(2)(b) --

1    I am reading from paragraph 125 of our complaint --

2    indicating that the subject of a consumer transaction is of

3    a particular standard, quality, grade, style or model when

4    it is not.  Section 13-11-4(2)(e) indicating that the

5    subject of a consumer transaction --

6              THE COURT:  Slow down.  Slow down.

7              MR. SCOTT:  Sorry, Your Honor.

8              -- previous representation when it was not.

9              This is paragraph 126.  The defendant's conduct

10   also violates rules adopted by the Utah Division of Consumer

11   Protection including Utah Admin Code R152-11-3(b)(1).  It

12   goes into the variations.  We are not limited because we

13   called out a specific way when we have identified the whole

14   statement and that it is entirely false.  No matter how you

15   cut it, it violates the law.  That is why they have not

16   cited any law saying we are limited in that way.  It is

17   relying exclusively on the say-so of counsel, which is

18   insufficient.

19             We have cited the pleading standard in our case

20   saying this is what is required.  We cited Rule 9(b).  We

21   cited the cases interpreting Rule 9(b) saying this is what

22   is required.  If you go more into the case law, there is an

23   analogous situation that if there is a series of fraudulent

24   misrepresentations over time, the law says you only have to

25   identify at least one of them to meet the pleading standard,

1    and then you have pled a claim for the whole thing.

2         If we are going to go into this nonexistent,

3    hypothetical world where this statement is, you know -- each

4    part can be independently -- that we were required to

5    identify each part -- let me start over.

6         I'm sorry.

7         If we were in a situation where the pleading

8    standard required us to treat this like separate

9    misrepresentations rather than saying this whole thing is

10   false like we did, we would have met the pleading standard

11   under Rule 9(b) because we gave one specific example.  That

12   is the standard.  That is the only law you have on this

13   issue and it is correct.  That is why there is no rebuttal

14   to that.  That is why we have no citations to any law is

15   because we have met the pleading standard.  We are allowed

16   to do this.

17        Getting back to my analogy of a breach of contract

18   claim, if I identify one breach it does not limit me to

19   others.  In fact, I lost this argument at the Utah Court of

20   Appeals once when I said, well, they didn't plead an implied

21   covenant claim, and Judge Harris on the Court of Appeals

22   was, like, they pled a breach of contract claim so you knew

23   all of the breaches were in play.  That is in a case called

24   LifeVantage vs. Hedges.

25        So this is an issue that is pretty well

1    established in the law.  We are not limited to the one

2    specific example, especially in a case like this where it

3    has clearly been litigated, when Judge Jenkins hearing these

4    same arguments made his statement that if they were not

5    100-percent pure mesquite or hickory, that they were not all

6    natural, that they were not 100-percent pure hardwood, so he

7    heard these same arguments and reached that conclusion in

8    his certification order.  He didn't expressly reject their

9    argument, but implicitly he certainly did.

10          So, Your Honor, if you're inclined to agree with

11   them --

12          THE COURT:  Reject or accept it?

13          MR. SCOTT:  What is that?

14          THE COURT:  Say that again, that last thing you

15   said.

16          MR. SCOTT:  He implicitly rejected Traeger's

17   argument that our claims were limited to just the

18   representation regarding what type of wood --

19          THE COURT:  I thought you said that he expressly

20   rejected your argument.

21          MR. SCOTT:  No.  He expressly rejected their

22   argument.  If I made that mistake, I'm very glad you caught

23   me, Your Honor.

24          THE COURT:  Maybe you didn't.  Maybe I misheard

25   you.

```
 1          MR. SCOTT:  To be clear we can read his statement
 2   again.  He said that Traeger has misrepresented the content
 3   of its pellets bags because the bags are not 100-percent
 4   pure hardwood pellets of any kind, and are certainly not
 5   100-percent pure nor all natural hickory or mesquite.  That
 6   is from page 8 of docket 237.
 7          He heard these same arguments.  This is an issue
 8   that has already been decided in this case, implicitly at
 9   least, and it is consistent with Rule 9(b) and the pleading
10   standards that govern this case.
11          Their argument that 100-percent pure applies only
12   to the hardwoods used is wrong, because that ignores the
13   pellets which include a significant portion of oils.  There
14   is no reference to oils anywhere on the front of this
15   package or anywhere on the back.
16          In fact, if you look at their packaging today it
17   still has no reference to oils.  They are still misleading
18   consumers about what is in their pellets.  They still call
19   them hardwood pellets when they are not all hardwood.
20          Now, that is not at issue here, just this
21   representation that it is 100-percent pure.  You cannot say
22   something is 100-percent pure mesquite, hickory, hardwood,
23   however you read it, and have it have other ingredients
24   including oil or have no mesquite or hickory.  There is no
25   other way to interpret this.
```

1          I had a couple of notes that I wanted to bring up

2   here.

3          We're talking about the Utah Consumer Sales

4   Practices Act.  Again, there is dearth of law on the Utah

5   Consumer Sales Practices Act so we end up relying a lot on

6   the plain language of the statute.  He says causation is an

7   element of both damages or injunctive relief, but the

8   statute does not say that and they cite no cases applying it

9   in that way.

10         In fact, Judge Jenkins specifically rejected that

11  argument.  I know he just said, no, he didn't, but I will

12  read you the exact language so there is no doubt that he

13  did.

14         The statute says whether a consumer seeks or is

15  entitled to recover damages or has an adequate remedy at

16  law, he may bring a class action for declaratory judgment,

17  an injunction and appropriate ancillary relief.

18         Judge Jenkins -- if I can find it.  We cited it in

19  here.  I am sorry, Your Honor.  It is taking me a second to

20  find it and I apologize.

21         Judge Jenkins said the plaintiffs may proceed with

22  a Utah class action seeking declaratory relief, injunctive

23  relief and appropriate ancillary relief under the Utah

24  Consumer Sales Practices Act without showing loss causation.

25         Now, Mr. Speyer brought up some examples that this

1    is some random person -- that brings up standing issues

2    that are not relevant here.  So there is a safeguard in

3    place for that.

4          Also, Mr. Speyer ignores the definitions of the

5    statute which defines consumer transactions and consumers in

6    a way that would also preclude that.  So that was a red

7    herring that the Court should not consider and it is not at

8    issue here.

9          Our plaintiffs and our entire classes were

10   purchasers of these pellets.  They do not have to show loss

11   causation.  They could not have any loss and they could be

12   angry and frustrated and think it was deceptive.

13         Now, the loss is not relevant here.  Mr. Speyer

14   said that our motion for summary judgment on damages should

15   be denied.  That is fine, because it does not exist.  We

16   made it clear in our motion that we were not seeking damages

17   at this point in our case.  We are seeking a declaration

18   that the misrepresentations that Traeger made violate the

19   Utah Consumer Sales Practices Act and the statutes.  So to

20   the extent the Court -- there is nothing to deny basically,

21   Your Honor.  We didn't seek damages in our motion for

22   summary judgment, so there is no portion of our motion to

23   deny on that.  I don't think we could have been more

24   explicit about not seeking damages as part of it.  We said

25   specifically that that issue was reserved.

1        THE COURT:  What else do you want to tell me?

2        MR. SCOTT:  As far as the California statutes go,

3   we had a couple of points there that I wanted to bring up.

4   He said we had no evidence of materiality or reliance.  Now,

5   again, we are in a situation where the statements on their

6   face are false.  The statements at issue, no matter how you

7   cut it, and no matter how you look at this, break it up,

8   keep it as a whole, it is false on its face.  We don't have

9   to prove that anyone was specifically misled when the

10  statement itself is false.

11       Now, we do have evidence of it and they don't like

12  it, and we have our own plaintiffs saying they were misled

13  and that is sufficient under California law.  They don't

14  like it, but that is the law.  We also have their own

15  research showing that 99.25 percent of consumers thought it

16  was important or the reason they buy being 100-percent pure

17  hardwood.  They can't get around that.  Judge Jenkins when

18  confronted with that exact same argument asked if their

19  marketing department had been fired over this, because we

20  have nearly a 100-percent swing the other direction.

21       Again, they have consistently tried to limit the

22  claims to not dealing with the whole statement, just to

23  dealing with the one part because they know they lose on

24  that.  So they hired their experts to do this and ignored

25  the rest.  When we are dealing with the motion to dismiss

1  which they brought up, that was very early on in the case

2  and we are not required at that point to lay out all of our

3  claims and we don't need to because, as you see, Your Honor,

4  we are still here.

5          THE COURT:  I do see that.

6          MR. SCOTT:  The motions to dismiss on whatever

7  basis were not completely successful.

8          So talking about failed motions to dismiss and

9  what was brought up in those is not very relevant when we

10  talk about what has actually been briefed in the case and

11  when the same issue has been briefed and we are here still.

12         So, Your Honor, we meet the requirements of each

13  of our claims, which are fairly minimal.  We just have to

14  generally show that the statements were false and we have to

15  show -- under Utah that is it, really, that they violated it

16  and that it was inconsistent with the language of the

17  statute, boom, and that is it and that is all that we have

18  to show, and the knowing and intentional thing.

19         We cited the statutes and the law on knowing and

20  intentional and they cite -- the only thing they have saying

21  we require more under the Utah Consumer Sales Practices Act

22  is one line from a case.  That is it.  The concepts of

23  knowing and intentional are well defined in the law.  They

24  didn't cite anything contradicting the statutory definition

25  of knowing, which means they were aware of the circumstances

1    and they absolutely were and they controlled the

2    circumstances.  They did the studies to show what was

3    important and they put it on the bags without regard to the

4    truthfulness of those representations.

5            So, Your Honor, we meet the elements.  To the

6    extent that Your Honor finds that one or more elements under

7    the California statutes is missing, which we say there is

8    not, absolutely not, and we have met every requirement and

9    we laid out how, and they don't like it and they say, well,

10   that is not the law, even though we cite law supporting it,

11   and they say we have no evidence, even though we cite to

12   evidence, at the end of the day we have met those

13   requirements.

14           If Your Honor has any concerns about them you can

15   still under Rule 56 enter a finding saying it violated the

16   statutes as long as it was relied upon, and that goes to the

17   damages issue again, but not to the actual violation, even

18   under the California statutes.  Your Honor is allowed to

19   make partial findings if you are persuaded, and if you are

20   persuaded that we have not somehow met the pleading

21   standards, we would seek leave to amend.

22           THE COURT:  Thank you, Mr. Scott.

23           Thank you all.

24           I will take this motion under advisement and get a

25   ruling out in due course.

1          We'll be in recess.

2          MR. SCOTT:  Thank you, Your Honor.

3          MR. SPEYER:  Thank you, Your Honor.

4          (Proceedings concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25