**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **MICHAEL YATES, and NORMAN L. JONES,**<br><br>**Plaintiff,**<br><br>v.<br><br>**TRAEGER PELLET GRILLS, LLC,**<br><br>**Defendant.** | **\*\*SEALED\*\***<br>**MEMORANDUM DECISION**<br>**AND ORDER**<br><br>Case No. 2:19-cv-723-DAK-CMR<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Cecilia M. Romero |

This matter is before the court on Plaintiffs Michael Yates and Norman Jones's Motion for Summary Judgment [ECF No. 240]. On March 14, 2024, the court held a hearing on the motions. At the hearing, Jared D. Scott, Karl S. Kronenberger, and Jacob Nelson represented Plaintiffs, and James F. Speyer, Julianne P. Blanch, and Juliette P. White represented Defendant Traeger Pellet Grills, LLC. The court took the motion under advisement. After carefully considering the memoranda filed by the parties and the law and facts relevant to the pending motion, the court issues the following Memorandum Decision and Order.

**BACKGROUND**

Traeger manufactures and markets wood pellet grills and wood pellets used to fuel those grills. Traeger owns the manufacturing facilities where its pellets are manufactured, and it develops and maintains the recipes for its pellets. Traeger sells many different varieties of pellets, including Mesquite, Hickory, Oak, and Alder pellets. Plaintiffs brought the present class action against Traeger, alleging that Traeger's packaging misrepresented to class members the products sold to class members in violation of the Utah Consumer Sales Practices Act ("UCSPA"), the California

Unfair Competition Law ("UCL") the California False Advertising Law ("FAL"), and California Civil Code §§ 1750, *et seq.* ("CLRA").

From October 1, 2015, through December 31, 2020 ("the Class Period"), Trager marketed its Mesquite and Hickory pellets in the packaging identified in the Second Amended Complaint and the exhibits to the present motion. During the Class Period, Traeger's pellets were packaged as "Mesquite" and 'Hickory" in large font, with "100% Pure Hardwood Pellets" listed under the flavor. However, Plaintiffs allege that the Mesquite pellets contain no mesquite, are not natural, and are not 100% pure hardwood. Instead, the pellets are made primarily of oak and alder and mixed with soybean oil that has been "flavored" with smoke oil derived from burning mesquite. Plaintiffs allege that the Hickory pellets contain a similar blend of other woods combined with no more than 50% hickory wood, and soybean oil flavored with smoke oil derived from burning hickory.

Traeger claims that the label statements "Mesquite/ 100% pure hardwood" and "Hickory/100% pure hardwood" are true. The bags do not state "100% pure mesquite hardwood" or "100% pure hickory hardwood." Traeger states that oak and alder are hardwoods with long cooking times and that it does not use any softwoods, like pine. Traeger states that it uses alder and oak because the woods have a mild, undistinctive flavor, and infusing the pellets with mesquite and hickory oil, or liquid smoke, imparts a predominant mesquite or hickory flavor to the finished product. Traeger further states that all wood pellet manufacturers make their pellets from sawdust that is compressed into pellets. And, in the manufacturing process, Trager adds soybean oil as a lubricant so the machinery will not seize up. Traeger asserts that it did not intentionally or knowingly seek to deceive consumers.

Plaintiffs assert that none of the pellet packages Class Members purchased included any

2

disclosure that the pellets contained soybean oil or liquid smoke. Similarly, none of the packages included any disclosure that the pellets were not all hickory or mesquite wood. The packages did not disclose that the pellets were primarily oak and/or alder wood. Traeger, however, counters that nothing in Plaintiffs' Complaint raises the issue of nondisclosures and , therefore, this case is not about nondisclosures.

Class representative Michael Yates states that a substantial factor influencing his decision to purchase the Traeger mesquite pellets was Traeger's representations on the product packaging. Yates indicates that he would not have purchased Traeger's mesquite pellets had he known that they were not comprised of mesquite wood.

Traeger sold millions of bags of Mesquite-flavored and Hickory-flavored pellets to class members. Plaintiffs claim that Trager's original market research in 2015 showed that the packaging claims most likely to cause consumers to purchase pellets included the terms "all natural," "100% pure hardwood," and the types of wood advertised and sold in the pellet bags. Traeger's research found these representations to be important to more than 99 percent of Trager customers. However, Traeger's experts in this litigation concluded that 98 percent of consumers did not find the representations to be important. The consumer surveys confirmed that members of the grilling community are more concerned with the taste of the cooked food that is produced by the pellets than the particular type of wood used in the pellets.

## DISCUSSION

### Plaintiffs' Motion for Summary Judgment

Plaintiffs seek summary judgment in their favor on their claims alleging that Traeger violated the Utah Consumer Sales Practices Act ("UCSPA"), the California Unfair Competition Law ("UCL") the California False Advertising Law ("FAL"), and California Civil Code §§ 1750,

*et seq.* ("CLRA") because Traeger allegedly misrepresented the content of its pellets to Class Members to sell more pellets.

### 1. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a). In the Tenth Circuit, "the moving party bears the burden of showing beyond a reasonable doubt that it is entitled to summary judgment." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). And the court views "the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

When a plaintiff moves for summary judgment, "a more stringent summary judgment standard applies." *Pelt*, 539 F.3d at 1280. To obtain summary judgment, the plaintiff, as the party that bears the burden of proof at trial, "cannot force the nonmoving party to come forward with 'specific facts showing there [is] a genuine issue for trial' merely by pointing to parts of the record that it believes illustrate the absence of a genuine issue of material fact. Instead, the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.*

### 2. Preliminary Issues

The parties raise two preliminary issues regarding the scope of Plaintiffs' claims and whether Plaintiffs can rely on evidence submitted for the first time with their reply memorandum.

### a. Scope of Claims

Traeger asserts that Plaintiffs' causes of action should be limited to only whether Traeger used the specific species of wood identified on the packaging because Plaintiffs' only allegation in

the Second Amended Complaint ("Complaint') is that Traeger claims that the pellets "comprise one type of wood when they primarily comprise another type of wood." Traeger argues that Plaintiffs have impermissibly expanded their claims from an assertion that Trager misrepresents the species of wood contained in the pellets to include the alleged falsity of other label statements, such as "All Natural" and "100% Pure Hardwood," when Plaintiffs did not put those statements at issue in the Complaint.

However, Traeger's argument is based on an unworkably narrow reading of the Complaint. The factual background in the Complaint goes beyond just the specific type of woods used. The Complaint states: "In marketing and selling its wood pellets, Defendant uniformly represents that its wood pellets comprise a specific type of wood. For example, Defendant markets and sells, 'Hickory BBQ Wood Pellets' and 'Mesquite BBQ Wood Pellets.' Defendant's representations about the wood pellets are false. Contrary to Defendant's advertisements and product packaging, Defendant's wood pellets do not comprise or even primarily comprise the identified wood. Thus, Defendant's Hickory BBQ Wood Pellets do not contain hickory wood. Instead, Defendant adds a hickory-flavored oil to a less expensive wood to give the Hickory BBQ Wood Pellets a hickory flavor, resulting in a weaker, less robust hickory flavor in cooked foods." Sec. Am. Compl. ¶¶ 8-12. That explanation alone addresses Plaintiffs' claim that instead of pure hardwood, Traeger has added flavored oils to the pellets to make the pellets taste like the advertised wood species. Traeger's argument would limit the case to whether oak and alder were used instead of hickory and mesquite.   But it is clear that the claims also relate to the addition of oil to impart the flavor. Even though this background regarding the addition of oils is not reiterated in the allegation of each cause of action, these paragraphs are incorporated by reference into each of Plaintiffs' causes of action.

The common questions of law and fact section of the Complaint also includes: "Whether Defendant's representations about the types of wood contained in or comprising the Traeger Pellets were false, misleading, or likely to deceive," and "whether Defendant misrepresented that the Traeger Pellets have characteristics, uses, or benefits that they do and did not have."   Sec. Am. Compl. ¶ 112.   These two questions put Traeger on notice that there was more at issue than just the types of wood contained in the pellets. These questions demonstrate that Plaintiffs had claims related to the broader "characteristics" Traeger claimed the pellets had that they in fact did not have. When read with the factual background and claims in the Complaint, these characteristics are certainly representations such as "100% pure hardwood."

Plaintiffs' causes of action refer to Traeger's "misrepresentations about the composition of the Traeger Pellets [being] likely to deceive the public." Sec. Am. Compl. ¶ 139. Plaintiffs also allege that Traeger offered to sell the pellets using a statement that would create in the mind of a reasonable consumer a false impression of the grade, quality, or origin of the pellets. Sec. Am. Compl. ¶ 126. Based on Plaintiffs' factual allegations, instead of pure 100% hickory or mesquite wood, the pellets contain oak or alder wood (other hardwoods), soybean oil for lubrication, and liquid smoke oil to impart the mesquite or hickory flavor. These claims necessarily relate to whether the pellets are 100% pure hardwood.   Plaintiffs' state that class representatives relied on Traeger's representation and "would not have purchased the Traeger Pellets had [they] been aware of the Pellets' actual composition."   *Id.* ¶ 161.   The alleged actual composition is wood and flavored oil.

Based on the court's reading of Plaintiffs' Complaint, the Complaint notified Traeger that claims relating to the composition of the pellets was at issue. Plaintiffs' claims regarding the use of oils instead of "pure hardwood" is inescapably tied to what species of wood was used. Plaintiffs

6

argue that instead of pure hickory or mesquite, the pellets contain oils imparting that flavor. Plaintiffs' Complaint is clearly alleging that the addition of items other than pure hickory or mesquite wood is not what is represented on the packaging.

Moreover, the parties and court have discussed the addition of oils to the pellets repeatedly throughout the case. After extensive briefing and hearings, Judge Jenkins granted Plaintiffs' certification motion, finding that "Traeger has misrepresented the content of its pellet bags because the bags are not '100% Pure Hardwood' pellets of any kind, and are certainly not '100% Pure' nor 'all natural hickory or mesquite.'" There is nothing in the court's prior discussion of the issues during class certification that is binding on this court.   But this discussion in the class certification order demonstrates that the natural outgrowth of Plaintiffs' allegations that the actual species of wood was not used is whether the packaging's use of the flavor and 100% pure hardwood misleads consumers as to the composition and characteristics of the pellets. Although Traeger contends that Plaintiffs cannot now claim that the term "100% pure hardwood" is misleading because Plaintiff did not specifically state those words in the Complaint, the use of the phrase "100% pure hardwood" on the packaging cannot be excised from the claim. The Complaint shows the entire packaging and specifically identifies the use of 100% pure hardwood in connection with the flavor or species of the wood. Traeger acknowledges that this case is about consumer perceptions of what the bags contain, not necessarily what the bag contained. It is inherent in the claim that the packaging was deceptive because the pellets did not contain 100% of the claimed wood, but rather used a cheaper hardwood and flavored oils, that the bag stated the flavor or species and the term 100% pure hardwood.

Plaintiffs' Complaint adequately identified the packaging at issue, what they believed to be deceptive on Traeger's packaging and the time periods for each, as well as the damages. The

Complaint did not specifically state that the use of flavored oil made the phrase "100% pure hardwood," deceptive, but Plaintiffs alleged that by using a different wood and flavored oils to sell pellets packaged as Traeger packaged it was deceptive. This sufficiently put at issue whether the phrase "100% pure hardwood" caused the packaging to be deceptive.

Similarly, Traeger argues that references in the summary judgment motion to alleged nondisclosures of information are also immaterial because none of the claims in the Complaint is based on any alleged nondisclosure. However, the court cannot agree with Traeger's assertion that the Complaint does not raise any material nondisclosures. The Complaint clearly addresses that flavored oils were added and that the composition and characteristics of the pellets were not accurate.   The composition and characteristics of the pellets were allegedly not as advertised because the packaging stated "100% pure hardwood."   This is tied to Plaintiffs' assertion that the packaging is misleading to consumers because it leaves the impression that the package contains 100% pure wood of an identified species when it in fact does not. The alleged addition of flavored oil without any mention of "flavored" is part and parcel to the claim relating to why a consumer would perceive that only hardwood was in the package. The scope of Plaintiffs' Complaint encompasses the addition of flavored oils when such composition and characteristics are not identified on the packaging.

The Complaint does not support Traeger's attempt to limit the scope of the alleged misrepresentation/deceptive advertising claims. The parties can argue about the packaging and reasonable consumer perceptions based on that packaging to the jury. The court finds no basis for limiting the scope of the parties' arguments at this stage of the litigation.

b. **Traeger's Objections to New Evidence Offered in Reply**

Plaintiffs submitted a 75-page appendix of evidence with their reply. Traeger claims that

Plaintiffs' improperly submitted the additional evidence because Traeger showed in its opposition memorandum that Plaintiffs had no evidence in support of their claims.

Under Local Rules, DUCivR 56-1(d), "[i]n the reply, a party may cite to evidence that was not previously cited only to rebut a claim that a material fact is in dispute. Otherwise, a reply may not contain additional evidence, and, if it does, the court may disregard it." Here, Traeger argues that Plaintiffs did not submit evidence "to rebut a claim that a material fact is in dispute" but, instead, belatedly submitted evidence to support their prima facie case, and did so only after Traeger's opposition pointed out that their motion lacked evidentiary support for key elements of their case. DUCivR 56-1(d) cannot be construed to authorize a party to withhold evidence until the reply. Such a construction would encourage sandbagging and render the briefing process longer and more expensive.   Plaintiffs' new evidence submitted in reply was improper under the District of Utah rules and due process principles. The court will disregard such evidence to the extent that it does not rebut a claim that a material fact is in dispute.

To the extent that Plaintiffs submitted the exhibits in response to Traeger's additional facts, they are not contrary to the Local Rules. For example, Traeger's additional Fact No. 1 in its Opposition states that "[i]n using Traeger grills and pellets, the primary concern of plaintiffs and the grilling community is the taste of the final, cooked food."   In response, Plaintiffs cited to Exhibit 7, which is a survey of Traeger's customers showing that the most important consideration was whether the pellets contain "100% pure hardwood."   Exhibit 7 is used for the proper purpose of rebutting Traeger's additional facts.   The rules contemplate a movant responding to the additional undisputed facts identified by the nonmovant and rebutting a claim that a material fact is in dispute.

Similarly, Exhibit 8, which is Traeger's response to interrogatories, was submitted to rebut

Traeger's affidavit claiming that packaging representing Traeger's mesquite-flavored and hickory-flavored pellets are true and accurate. Traeger has repeatedly admitted that its pellets contain flavoring oils and soybean oil.

### 1. UCSPA

Plaintiffs ask the court to enter summary judgment confirming that Traeger's false representations on the Hickory and Mesquite pellet packages violated the UCSPA. Plaintiffs argue that Traeger's misrepresentations are a knowing and intentional violation of the UCSPA. Under the UCSPA, a supplier cannot knowingly or intentionally "(a) indicate[] that the subject of a consumer transaction has . . . performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicate[] that the subject of a consumer transaction is of a particular standards, quality, grade, style, or model, if it is not." Utah Code Ann. § 13-11-4(2)(a)-(b).   The administrative rules promulgated by the Utah Division of Consumer Protection also state that a supplier violates the UCSPA if the supplier: (1) "uses a statement or illustration in any advertisement which would create in the mind of a reasonable consumer a false impression of the grade, quality, quantity, make, value, . . .or origin of the consumer commodities offered or which otherwise misrepresents the consumer commodities in such a manner that, on subsequent disclosure or discovery of the true facts, the consumer is diverted from the advertised consumer commodities to other consumer commodities;" or "deliver[s] offered consumer commodities which are . . . materially different from the offered consumer commodities"; or "misrepresents the former price, savings, quality, or ownership of any goods sold."   Utah Admin. Code R152-11-3(b)(1), (3), and (5).

Plaintiffs argue that Traeger's misrepresentations that the Hickory and Mesquite pellets were 100% hickory, 100% mesquite, 100% hardwood, and all natural were false. This, Plaintiffs

contend, violates the prohibition on misrepresenting the performance, characteristics, benefits, standard, quality, grade, origin, and style of the pellets in Utah Code Ann. § 13-11-4 and the relevant administrative rules. It also allegedly violates the prohibition in the administrative rules on delivering a product that is materially different from the offered product.

However, Plaintiffs failed to establish that there is no genuine issue of material facts as to whether Traeger knowingly or intentionally engaged in deceptive conduct. "[T]he plain language of the UCSPA specifically identifies intentional or knowing behavior as an element of a deceptive act or practice." *Gallegos v. LVNV Funding LLC*, 169 F. Supp. 3d 1235, 1244 (D. Utah 2016). To conclude as a matter of law on summary judgment that a practice or act is deceptive under the UCSPA, the court must determine that no genuine issue of material fact exists that "the requisite intent to deceiver was . . . present." *Wade v. Jobe*, 818 P.2d 1006, 1016 (Utah 1991), *abrogated on other grounds in Carlie v. Morgan*, 922 P.2d 1, 5 (Utah 1996). UCSPA's intent requirement distinguishes it from the federal FTC Act and the vast majority of state consumer protection statutes, which do not require a showing of scienter. *Martinez v. Best Buy Co.*, 283 P.3d 521, 523-24 (Utah Ct. App. 2012).

The UCSPA states that a supplier like Traeger violates the UCSPA if it "knowingly or intentionally" engages in deceptive acts. Utah law explains that a person does an act knowingly if "he is aware of the nature of his conduct or the existing circumstances." An act is done intentionally by a person "when it is his conscious objective or desire to engage in the conduct." Utah Doe Ann. § 76-2-103(1). Thus, the actor must only know or intend to perform the act that ultimately violated the UCSPA. There is no requirement for the supplier to know that the act violates the UCSPA or that it was the intent of the supplier to break the law.

Plaintiffs contend that the facts supporting Traeger's knowing and intentional acts are

undisputed.   It is undisputed that Traeger marketed the mesquite-flavored and hickory-flavored pellets in the challenged packaging. But the parties disagree as to whether that packaging is actually deceptive. It is also undisputed that Traeger owns the manufacturing facilities where the pellets are manufactured and that it "develops and maintains the recipes for Traeger Pellets." But arguing that Traeger was aware of the composition of the pellet bags does not establish that Traeger intentionally or knowingly sought to deceive consumers. The Sutherland Declaration illustrates that one can know the composition of the pellet bags while simultaneously having a good-faith belief that the label statement is true and accurate because the pellets produce authentic mesquite taste in cooked food, and they are made from hardwood. Whether Traeger knowingly and intentionally engaged in deceptive conduct is a fact issue and the evidence before the court establishes a genuine dispute.[1]

Traeger also argues that the court should deny Plaintiffs' motion because Plaintiffs have not shown undisputed proof of causation. Consumers may bring a class action for damages if they have suffered a loss as a result of a violation of the UCSPA. However, "[w]hether a consumer seeks or is entitled to recover damages or has an adequate remedy at law, he may bring a class action for declaratory judgment, an injunction and appropriate ancillary relief." Utah Code Ann. § 13-11-19(3). In his class certification order, Judge Jenkins also recognized this and explained that "Plaintiffs may proceed with a Utah class action seeking declaratory relief, injunctive relief, and 'appropriate ancillary relief' under the UCSPA without showing loss causation." ECF No. 237.

---

1       If a violation of the UCSPA is not knowing or intentional but is instead based on a "bona fide error," this limits damages to the amount "in which the supplier was unjustly enriched by the violation."   Utah Code Ann. § 13-11-19(4)(c). If Traeger shows that its acts were not actually intentionally or knowingly deceptive, it will still violate the UCSPA. The only difference would be the measure of damages, which are not at issue in this motion. However, there is a question of fact as to whether Traeger's acts were knowingly and intentionally deceptive.

Plaintiffs' motion for summary judgment expressly leaves the question of damages open. Therefore, Traeger's argument provides no basis for denying the motion.

Traeger also argues that Plaintiffs cannot seek relief under the UCSPA itself because the UCSPA limits class actions for damages to claims under administrative rules. This argument is in reference to Utah Code Annotated Section 13-11-19(4)(a), which states that "[a] consumer who suffers a loss as a result of a violation of this chapter may bring a class action for the actual damages caused by an act or practice specified as violating this chapter by a rule adopted by the enforcing authority."   However, here, Plaintiffs are seeking both damages and other forms of relief.   For all other claims, the statute is clear that "[w]hether a consumer seeks or is entitled to recover damages or has an adequate remedy at law, he may bring a class action for declaratory judgment, an injunction and appropriate ancillary relief." Utah Code Ann. § 13—11-19(3). Nothing in the UCSPA bars class actions for violations of the terms of the UCSPA itself for claims other than damages. The instant motion leaves open the question of damages so this argument is inapplicable.

UCSPA limits on class actions in federal court for claims under the UCSPA are preempted by Rule 23 and inconsistent with the United States Supreme Court's *Shady Grove Orthopedic Ass'n v. Allstate Ins.*, 559 U.S. 393 (2010) (plurality) decision. Traeger argues that because this case is a class action seeking money damages, limitations in Section 13-11-19(4)(a) prohibit Plaintiffs from any claims under the UCSPA itself. However, Traeger has made this argument multiple times in prior briefing without any success because these restrictions are preempted by FRCP 23. *Shady Grove* explains why Section 13-11-19(4)(a)'s purported limitations on the right to bring a class action in federal court are preempted. *Shady Grove* held that FRCP 23 constitutes a "categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a

13

class action." *Id.* at 398. Thus Rule 23 "unambiguously authorizes any plaintiff, in any federal civil proceeding, to maintain a class action if the Rule's prerequisites are met." *Id.* at 406. Because "Rule 23 permits all class actions that meet its requirements, . . . a State cannot limit that permission by structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements." *Id.* at 401.

Traeger relies on *Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271, 1282 (D. Utah 2020) finding that "class actions seeking money damages are available only when a supplier's actions violate an existing administrative rule, court order, or consent decree." But that case permitted the class claims in federal court due to rule violations and did not mention nor overrule *Shady Grove.* Traeger cannot plausibly claim that Rule 23 modifies a substantive (versus procedural) right, especially where Traeger did not make any argument, or submit any evidence, about a substantive right in this case, nor did Traeger cite to any case that analyzed whether Utah Code Ann. § 13-11-19(4)(a) is procedural or substantive. Utah Code § 13-11-19(4)(a) cannot be interpreted to prohibit class actions in federal courts under the statute as consumers have a right to a class action under Rule 23.

In any event, Plaintiffs also argue that Traeger's conduct violated Utah Administrative Code R152-11-3(b)(3). Traeger argues that R152-11-3(b)(3) does not apply because it requires proof that Traeger "attempted to persuade a consumer to repudiate the purchase of the offered commodities." However, the full rule includes "[d]elivering offered consumer commodities which are unusable or impractical for the purposes represented or materially different from the offered consumer commodities." Utah Admin. R. 152-11-3(b)(3). Here, Traeger advertised "Mesquite--100% Pure Hardwood Pellets" and "Hickory--100% Pure Hardwood Pellets" yet allegedly delivered pellets that did not contain the identified woods and were not only hardwood. The pellets

were allegedly oak or alder and contained liquid smoke and soybean oil. There is at least a question of fact as to whether the delivery of these pellets was the deliver of a materially different product than advertised and thus a violation of this administrative rule.

Plaintiffs also allege that Traeger violated Utah Administrative Code R152-11-3(b)(4) and (b)(5) by misrepresenting the contents of the pellets. Utah Administrative Code R152-11-3(b)(5) states that it is a deceptive act under the UCSPA when "[a] supplier misrepresents the former price, savings, quality or ownership of any goods sold." If Traeger misrepresents the quality of its pellets by advertising the flavored pellets as pure hardwood pellets, then it could be a violation of this rule. Traeger argues that it did not violate this rule because its labels do not make any actual misrepresentation, the problem is only how consumers interpret or understand the label.   The parties will have to present their divergent arguments to a jury.

The court, therefore, concludes that disputed issues of material fact preclude summary judgment in Plaintiff's favor on their UCSPA claim. Accordingly, Plaintiff's motion for summary judgment on the UCSPA claim is denied.

### 2.  UCL, FAL, CLRA

Plaintiffs further seek summary judgment in their favor on their California state law claims. The California Unfair Competition Law ("UCL") California Business and Professions Code Section 17200 "defines unfair competition very broadly, to include anything that can properly be called a business practice and that at the same time is forbidden by law." *Chabner v. United of Omaha Life Ins.*, 225 F.3d 1042, 1048 (9th Cir. 2000). Any violation of California's False Advertising Law ("FAL"), California Business and Professions Code § 17500, necessarily violates the UCL. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002). The FAL prohibits "any advertising device . . . which is untrue or misleading." Cal Bus. & Prof. Code § 17500.   The FAL

has been broadly construed to proscribe "not only advertising, which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky*, 27 Cal. 4th at 951.

The CLRA prohibits several categories of unfair and deceptive acts and practices in connection with the sale of goods to consumers. The CLRA is to be "liberally construed." Cal. Civ. Code § 1760. Further, acts specifically prohibited under the CLRA include: representing that goods have certain characteristics that they do not have, *id.* § 1770(a)(5); representing that goods are of a "particular standard, quality or grade . . . if they are of another," *id.* § 1770(a)(7); advertising "goods or services with intent not to sell them as advertised," *id.* § 1770(a)(9); and representing that the "subject of a transaction has been supplied in accordance with a previous representation when it has not," *id.* § 1770(a)(16).

The UCL, FAL and CLRA require a plaintiff to demonstrate standing—i.e., that the plaintiff relied on the defendant's alleged misrepresentations and that he/she suffered injury as a result. Cal. Bus. & Prof. Code §§ 17204, 17535; *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010). The burden under the CLRA can be met "by showing that the alleged misrepresentation would have been material to reasonable persons." *Jones v. ConAgra Foods, Inc.*, No, 12-01633, 2014 WL 2702726, at *15 (N.D. Cal. June 13, 2014). "A representation is 'material' . . . if a reasonable consumer would attach importance to it or if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (citations omitted).

Under the UCL and FAL, the plaintiff must have actually relied on the misrepresentation and suffered economic injury as a result of that reliance. *Bumble Bee Foods*, 2014 WL 27527, at

*7. In a class action, the reliance requirement applies only to the named plaintiff. *In re Tobacco II Cases*, 46 Cal. 4th 298, 324 (2009). A presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. *See id.* A misrepresentation is "material" if a reasonable person would attach importance to its existence or nonexistence in determining his/her choice of action in the transaction in question. *Id.*

In this case, Plaintiffs allege that Traeger's representations that the Hickory and Mesquite pellets contained hickory or mesquite wood, were 100 percent pure hardwood of any type, and all natural are untrue in violation of the UCL and FAL. Plaintiffs also contend that Traeger's packaging violates the CLRA in that it: (a) falsely represents that the pellets have characteristics they do not have; (b) falsely represents that the pellets are of a particular standard, quality, or grade; (c) advertises the pellets with an intent not to sell them as advertised; and (d) falsely represents that the pellets have been provided in accordance with a previous representation.

Plaintiffs also assert that Traeger's alleged misrepresentations about the pellets are material because the evidence shows that a reasonable consumer would consider them important. For example, Plaintiff Yates has indicated that Traeger's representations on the product packaging for the mesquite pellets was a substantial factor in influencing his decision to purchase the product. Yates also indicated that he would not have purchased Traeger's mesquite pellets had he known that they were not comprised of mesquite wood. Thus, Plaintiffs argue that they have established the falsity, materiality, and reliance necessary to succeed on their UCL, FAL, and CLRA claims.

However, Plaintiffs do not grapple with the evidence Traeger has submitted and fail to establish that there is no genuine dispute that reasonable consumers are likely to be deceived. Plaintiffs' claims under the UCL, FAL, and CLRA are governed by the "reasonable consumer" standard. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). Under this standard, "plaintiff is

required to show not simply that the defendant's [statements] *could* mislead the public, but that they were *likely* to mislead the public." *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1406-07 (E.D. Cal. 1997) (emphasis in original). To satisfy the "likely to mislead" standard, plaintiffs must show that "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).

The court concludes that Plaintiffs' evidence on summary judgment has failed to make the requisite showing. In assessing advertising claims, the exact words matter as does the placement of those words. *Townsend v. Monster Bev. Co.*, 303 F. Supp. 3d 1010, 1023-24 (C.D. Cal. 2018). The packaging states 100% pure hardwood. The pellets contain 100% hardwood. "Mesquite" and "Hickory" are in large font at the top of the label and accurately informs consumers that the pellets deliver authentic mesquite and hickory flavoring and taste. Traeger claims to have evidence showing that Traeger's Mesquite pellets provide a superior taste experience than pellets made from mesquite wood. While Plaintiffs have evidence and strong arguments on their side, they do not address the possibility that Traeger has any evidence or arguments that could also be considered and relied on by a reasonable jury. A jury needs to weigh the evidence and arguments on these issues, not the court.

California statutes "prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). There is a question of fact as to whether reasonable consumers would "interpret" the label statements to "mean" that the pellets are made from 100% mesquite wood and hickory wood. In connection with the evidence submitted on summary judgment, there is disputed evidence on how

18

reasonable consumers might interpret the label statements. Courts repeatedly reject evidence-free claims as to how consumers interpret advertising statements. *See*, *e.g.. Ries v. Ariz. Beverages USA, LLC*, No. 10-01139 RS, 2013 WL 1287416, at *7 (N.D. Cal. Mar. 28, 2013) (granting summary judgment for defendants because plaintiffs "have neither intrinsic evidence that the labels are false . . . *or* extrinsic evidence that a significant portion of the consuming public would be confused by them.") Plaintiffs have evidence from Traeger with respect to consumer surveys and marketing research, but they have not submitted specific evidence showing that a "significant portion" of the consuming public construes the Traeger packaging as communicating that the pellets are 100% mesquite or hickory wood.

The court cannot simply assume that reasonable consumers must understand the label in the manner Plaintiffs propose. This cannot satisfy Plaintiffs' burden of showing entitlement to summary judgment. Because Plaintiff is the moving party, the court must construe the evidence and all reasonable inferences in the light most favorable to Traeger.

The question of how consumers interpret advertising claims must be decided with evidence of how consumers interpret those claims, not just evidence of what is important to them. *People of the State of Cal. v. Kohl's Dep't Stores, Inc.*, No. BC643037, slip op. at 5 (Cal. Super. Ct. July 13, 2021). Plaintiffs cite *Brockery v. Moore* for the proposition that "the primary evidence in a false advertising claim is the advertising itself."   But this generality cannot help Plaintiffs because *Brockery* did not hold or suggest that plaintiffs can dispense with the need to produce extrinsic evidence supporting their claims. 107 Cal. App. 4th 86, 99-100 (2003).   In fact, the plaintiff in *Brockery* presented evidence that "a number of consumers were actually deceived" by the alleged false statements—proof that is missing from Plaintiffs' motion in this case.

There is also a line of cases rejecting the "view that a plaintiff must produce a consumer

survey or similar evidence to prevail on a claim that the public is likely to be misled by a representation." *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 890 (N.D. 2016). But these cases make clear that while a "consumer survey or similar" evidence may not be a prerequisite, the plaintiff still needs extrinsic evidence to show that consumers are likely to be misled—especially where, as here, the claim is not based on a straightforward misrepresentation but is instead based on how consumers interpret or understand a marketing statement. *See Mullins*, 178 F. Supp. at 891. In this case, Plaintiffs have submitted no extrinsic evidence showing how a significant portion of consumers understand the label statements at issue in this case.

Plaintiffs concede that the California statutes at issue require proof of reliance on Traeger's alleged misrepresentations. Plaintiffs assert that they satisfy this essential element because (1) reliance can be established by showing that the alleged misrepresentations were material, and (2) they have proven that no genuine dispute exists with respect to materiality. A misrepresentation is "material" under the California claims if (a) a reasonable consumer would attach importance to it, or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013).

Plaintiffs failed to establish that no genuine dispute exists as to materiality. While Plaintiffs have evidence of materiality from past Traeger studies, Traeger has submitted evidence of lack of materiality. Traeger's expert witness, Dr. Kivetz, conducted two consumer surveys with over 800 participants on precisely this question.   The surveys conclusively showed that the alleged misrepresentations were not material to the buying decisions of consumers. The parties will need to submit the conflicting evidence to a jury. Given the evidence before the court, the court is not in a position to rule that no reasonable jury could find in favor of Traeger.   Therefore, the question of

materiality is in dispute and the evidentiary record precludes summary judgment.

As a final matter, Plaintiffs argue that the court should strike Traeger's "sham" facts. Traeger has opposed summary judgment, in part, on the grounds that the wording on its pellet bags is true. Plaintiffs contend that the undisputed material facts in this case demonstrate otherwise. Traeger has admitted that they marketed the pellets as mesquite and hickory despite the fact that these pellets were not comprised of 100% pure mesquite or hickory hardwood. Deposition testimony from Traeger's witnesses was consistent with its patent, which demonstrates that lubricant oil and wood oil are used. Traeger produced the recipes of the pellets. Plaintiffs argue that Traeger has made numerous, clear, and definitive statements about how its pellets are not 100% pure hardwood and that such statements conflict with its new argument that the packaging is technically true.

In the Tenth Circuit, "courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). Underlying such a decision is the conclusion that "the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony." *Id.* "Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Id.*

Plaintiffs argue that each of these factors, combined with the circumstances surrounding Traeger's prior testimony and positions on the issue, weigh in favor of the court rejecting

Traeger's attempt to create a sham fact issue. However, whether the packaging deceives consumers is the main issue in this case and Traeger is merely asserting that there are arguments in support of its position that the packaging is not deceptive. Traeger's admissions as to the patent and recipe for the pellets does not preclude it from making arguments that the packaging is not deceptive. It is not a sham fact for Traeger to assert that the "Hickory" or "Mesquite" label refers to the flavor the pellets impart. It is not a sham fact that the pellets contain hardwood, not softwood. If all pellets contain some sort of lubrication oil in order to actually make the pellet, the parties may have to address industry standards on the issue. Traeger's arguments do not appear to be an attempt to create sham fact issues as that term is used by the Tenth Circuit. Traeger is merely presenting its arguments with respect to the main issue in the case.

The court concludes that disputed issues of material fact preclude summary judgment on Plaintiff's UCL, FAL, and CLRA claims. Accordingly, the court denies Plaintiff's motion for summary judgment on these claims.

## CONCLUSION

Based on the above reasoning, Plaintiffs Michael Yates and Norman Jones's Motion for Summary Judgment [ECF No. 240] is DENIED. This Memorandum Decision and Order is being filed under seal because the parties' briefing on the motion was filed under seal. However, within ten days of the date of this Order, the parties shall notify the court whether this Order can be fully unsealed or whether portions of it need to remain under seal. If portions of this Order must remain under seal, at the time of so notifying the court, the parties shall provide the court with a redacted version of the Order that can be filed publicly on the court's CM/ECF docket.

According to the court's docket, the last Scheduling Order entered in this case was February 16, 2022, and it only addressed deadlines for Traeger's preliminary expert reports,

completion of fact discovery, and briefing on the motion for class certification. Because this case was reassigned to the undersigned judge from Judge Jenkins, the court is unfamiliar with what remaining deadlines are needed. Within twenty days of the date of this Order, the parties shall submit a new scheduling order identifying (1) any remaining discovery/expert related deadlines that are needed, (2) whether any other dispositive motions will be filed, (3) the time the parties anticipate they need to prepare for trial, and (4) the anticipated length of trial needed. The court will then set the matter for trial. After setting the case for trial, the court will enter a Trial Order with pretrial deadlines for motions in limine, proposed jury instructions and verdict forms, proposed voir dire, designations of deposition testimony, and the exchange of witness and exhibit lists.

      DATED this 1st day of July 2024.

            BY THE COURT:

            DALE A. KIMBALL,
            UNITED STATES DISTRICT JUDGE